161 N.J. Super. 293 (1978)
391 A.2d 923
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
WILLIAM A. BROWER, ELIZABETH H. BROWER, FLORENCE ROSENSTEIN, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF CHARLES ROSENSTEIN, AND RAYMOND WHITE, DEFENDANTS, AND WILLIAM GESCHKE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1977.
Decided August 4, 1978.
*294 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. Philip G. Auerbach argued the cause for appellant (Messrs. Auerbach, Rudnick & Waldman, attorneys).
Mr. Richard D. Catenacci argued the cause for respondent (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendant William Geschke appeals from a summary judgment of the Law Division declaring that plaintiff New Jersey Manufacturers Insurance Company's insured, William A. Brower, was not entitled to coverage under a homeowners insurance policy for the shotgun wounds he intentionally inflicted upon Geschke, on the ground that the policy expressly excluded coverage for bodily injury "caused intentionally by or at the direction of the insured."[1]
*295 It appears without conflict that on August 22, 1974 Brower shot and killed Charles Rosenstein and wounded Geschke and Raymond White. Brower was convicted of the second degree murder of Rosenstein and of assault with intent to kill Geschke and White. The jury's verdict necessarily was predicated upon a finding that Geschke's injuries were intentionally inflicted by Brower. N.J.S.A. 2A:90-2.
Thus at issue in this case is whether the doctrine of collateral estoppel barred Geschke from relitigating with Manufacturers the question of whether his injuries were intentionally caused by Brower. We are satisfied that it does and therefore affirm the grant of summary judgment.
Brower was dissatisfied with a motorcycle for his son that he previously purchased from Rosenstein, the owner of a motorcycle shop. Apparently, the motorcycle did not operate to Brower's satisfaction and he made several calls to the shop to solve the problem. When he was unable to obtain satisfaction from Rosenstein, he returned the motorcycle to the shop in his pickup truck. Brower and Rosenstein became embroiled in an argument. A scuffle ensued. Rosenstein ordered Brower from the property and, finally, forcibly ejected him. While it is not altogether clear whether Brower entered the cab of his pickup truck voluntarily or whether Rosenstein forced him into the cab, as Brower claimed, it is undisputed that Brower picked up a *296 shotgun from the floor of the cab and loaded it with two shells. He stuck the gun out the cab's window and shot Rosenstein as well as Geschke and White, who were standing next to Rosenstein in the parking lot. While at the criminal trial Brower claimed that upon shooting he only saw Rosenstein, he admitted that he knew all three men were there. Moreover, it was Geschke who testified that Brower pointed the shotgun directly at him as the following pertinent excerpt from his trial testimony shows:
Q. On your left? You turned around. What did you see?
A. A shotgun pointing right at me.
Q. Bill, let me ask you this: That shotgun had been pointed at Shep in your opinion?
A. On the first shot, no.
Q. Yes.
A. No.
Q. You are sure it was pointed directly at you?
A. Directly at me.
Q. Can you tell me, Bill, whether it was pointed towards the ground or up in the air or what level?
A. It was pointed right at my chest.
Q. Where was Ray, do you know?
A. On my right. He was almost in the fence.
Q. Turned around and saw that shotgun, what did you do?
A. I started to go for my gun. It was, you know, the shot was fired and I was pushed  picked up and thrown against the wall.
Rosenstein died as a result of his wounds. Geschke, in particular, was injured seriously.
Geschke instituted an action against Brower to recover damages for the personal injuries he sustained. His wife sued per quod. Notwithstanding Brower's conviction for assault with intent to kill Geschke based largely on Geschke's testimony, they contended that the shooting was accidental. Thereupon, Manufacturers instituted this declaratory judgment action seeking an adjudication that Brower was not entitled to coverage under its homeowners insurance policy and joined as defendants Geschke, Brower and his wife, White and Florence Rosenstein, individually and as both the administratrix ad prosequendum and general administratrix *297 of the estate of Charles Rosenstein. The complaint in this action was not served on White. A default judgment was entered against Brower, his wife and the Rosenstein interests. Geschke filed an answer in which he again denied that Brower intentionally inflicted the gun shot wounds on him, and claimed, by way of separate defense, that:
On the date in question, the defendant Brower, although his intent might have been otherwise with respect to the shooting of either Mr. Charles Rosenstein or Raymond White, he accidentally according to all reports wounded Mr. Geschke.
Manufacturers moved for summary judgment, contending that its policy expressly excluded coverage for Geschke's bodily injury claim because Brower intentionally caused Geschke's injuries as conclusively established by the latter's conviction for assault with intent to kill Geschke. The trial court agreed and granted the motion. Geschke appealed.
The doctrine of collateral estoppel is a branch of the broader law of res judicata which bars relitigation of any issue actually determined in a prior action generally between the same parties and their privies involving a different claim or cause of action. State v. Gonzalez, 75 N.J. 181, 186 (1977); United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101 (1977); Mazzilli v. Accident, &c., Cas. Ins. Co., etc., 26 N.J. 307, 313-314 (1958); Miraglia v. Miraglia, 106 N.J. Super. 266, 271 (App. Div. 1969); Public Service Elec. and Gas Co. v. Waldroup, 38 N.J. Super. 419, 425-426 (App. Div. 1955). This doctrine has been applied in civil actions to conclude a party as to an issue actually determined against it not only in prior civil actions, but in prior criminal proceedings as well. Thus a criminal conviction can bar the person convicted and his privies as to an issue of fact necessarily determined by the conviction and material to a civil litigation to which he is a party. See, for example, Breeland v. Security Ins. Co. of New Haven, Conn., 421 F.2d 918 (5 Cir.1969); United States v. Fabric Garment Co., 366 F.2d 530 (2 Cir.1966); *298 Travelers Indem. Co. v. Walburn, 378 F. Supp. 860 (D.D.C. 1974); Bressan Export-Import Co. v. Conlew, 346 F. Supp. 683 (E.D. Pa. 1972); Janney v. Arlan's Department Store, 247 F. Supp. 306 (W.D. Va. 1965); Travelers Ins. Co. v. Thompson, 281 Minn. 547, 163 N.W.2d 289 (Sup. Ct. 1968), app. dism. and cert. den. 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175 (1969); Taylor v. Taylor, 257 N.C. 130, 125 S.E.2d 373 (Sup. Ct. 1962); Eagle, Star & British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490 (Sup. Ct. App. 1927); Clemmer v. Hartford Ins. Co., 66 Cal. App.3d 190, 135 Cal. Rptr. 848 (D. Ct. App. 1977). In fact, in New Jersey evidence of a judgment convicting a party of an indictable offense may be introduced against that party in a civil proceeding to prove any fact essential to sustain the judgment. Evid. R. 63 (20).
The doctrine of collateral estoppel is not rendered inapplicable by virtue of the fact that the parties in the civil action are not the same as those in the criminal proceeding. Complete identity of parties is no longer required. Collateral estoppel until recently was available only where there was mutuality of estoppels, that is, only where the party taking advantage of the earlier adjudication would have been bound by it, had it gone the other way. The requirement of mutuality is no longer rigidly adhered to in this state. The more flexible modern view has been tentatively formulated by the American Law Institute as follows:
A party precluded from relitigating an issue with an opposing party, in accordance with §§ 68 and 68.1, is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue. * * * [Those circumstances were enumerated at § 68.1] [Restatement, Judgments 2d § 88 (Tent. Draft No. 2 (April 15, 1975))]
See also, Gonzalez, supra at 189-192; United Rental Equip. Co., supra 74 N.J. at 101. See also, McAndrew v. Mularchuk, *299 38 N.J. 156, 161 (1962); Continental Can Co. v. Hudson Foam Latex Prod., 129 N.J. Super. 426, 429-430 (App. Div. 1974).
As a result of the virtual abandonment of the principle of rigid mutuality Manufacturers did not have to be a party to the prior criminal proceedings to benefit from collateral estoppel. While Geschke also was not a party to those proceedings, he was in privity with Brower. Therefore, he is barred from relitigating any issue necessarily decided against Brower in the earlier criminal action. Geschke's rights under the insurance policy are derivative from those of Brower. In effect, Geschke stands in the shoes of Brower with respect to the liability policy involved. See Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 397 (1970). Moreover, there was an identity of interest between Geschke and Brower at the time of the criminal proceedings. Brower, who was charged with, among other crimes, assault with intent to kill, was afforded a full opportunity to litigate the issue of his guilt. He had every reason to make as vigorous and effective a defense as possible. His personal interests would have been served by establishing that he did not intend to assault Geschke because he would have avoided criminal responsibility for the assault and retained his liability coverage. Geschke had a similar interest in the outcome of the trial because coverage would not be precluded if Brower did not intentionally assault him.
The conviction of Brower for assault with intent to kill stamps the assault upon Geschke as an intentional one. The jury could not have returned such a verdict without making a determination that the assault was intentional, not accidental as now claimed by Geschke. Thus, the finding of guilt conclusively established that Geschke's injuries were intentionally caused by Brower and collaterally estopped Geschke from relitigating that same issue with Manufacturers. Burd, supra, relied upon by Geschke, is distinguishable and does not support a contrary conclusion. There the court refused to apply collateral estoppel because it was not *300 clear, in view of an intoxication defense, whether intent within the meaning of the policy exclusion had been actually decided below. In refusing to give conclusive effect to the prior criminal judgment, the court noted:
Since the record on this appeal did not reveal the issues actually tried in the criminal case, we could not be sure the jury found facts decisive with respect to the insurance controversy. [Id. at 397]
Here the issue of intent is not beclouded by any such defense. The jury finding that Brower had the specific intent to kill Geschke was necessary to sustain Brower's conviction and satisfies the standard for applying the exclusion clause enunciated in Lyons v. Hartford Ins. Group, 125 N.J. Super. 239, 247 (App. Div. 1973), certif. den. 64 N.J. 322 (1974). See also, Oakes v. State Farm, 137 N.J. Super. 365, 367-368 (App. Div. 1975), certif. den. 70 N.J. 142 (1976). See also, Ambassador Ins. Co. v. Montes, 76 N.J. 477 (1978) (Pashman, J., concurring); Annotation, "Liability Insurance: Specific Exclusion of Liability for Injury Intentionally Caused by Insured," 2 A.L.R.3d 1238, 1243-1245 (1965), Supp. at 69-71 (1977).
The decision of the Supreme Court in Ambassador, supra, which modified the prior-settled rule that indemnification by liability insurance of a person for a loss incurred as a result of his own willful wrongdoing in violation of a criminal statute is contrary to public policy, does not dictate a different result. Ambassador held that when a comprehensive general liability insurance policy does not have an exclusion provision for the insured's intentional acts the insurance company is responsible to an injured person for those sums which the insured is legally obligated to pay such person for causing him personal injuries provided the insured in no way benefits from the payment by the insurer. Ambassador does not apply here as Brower's homeowners policy contained a specific clause excluding coverage for bodily injury caused intentionally by him. See footnote 1.
Accordingly, the judgment of the Law Division is affirmed.
NOTES
[1] The homeowners policy of insurance here involved, in pertinent part, provided:

PROVISIONS APPLICABLE TO SECTION II
THIS COMPANY AGREES WITH THE NAMED INSURED:
INSURING AGREEMENTS
1. COVERAGE E  PERSONAL LIABILITY:
(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.
* * *
SPECIAL EXCLUSIONS
Section II of this Policy Does Not Apply:
* * *
(c) under Coverages E and F, to bodily injury or property damage caused intentionally by or at tht direction of the Insured; * * *.