172 N.J. Super. 53 (1980)
410 A.2d 718
GARDEN STATE FIRE & CASUALTY CO., A CORPORATION, PLAINTIFF-RESPONDENT,
v.
RONALD KEEFE AND JOHN F. KELLEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 3, 1980.
Decided January 22, 1980.
*55 Before Judges LORA, ANTELL and PRESSLER.
Auerbach, Rudnick, Waldman and Ford, attorneys for the appellant John F. Kelley (Daniel M. Waldman, of counsel; James J. Addonizio, of counsel and on the brief).
Lieb, Berlin & Kaplan, attorneys for the respondent (Jerome S. Lieb, of counsel and on the brief).
No brief was filed on behalf of appellant Ronald Keefe.
The opinion of the court was delivered by PRESSLER, J.A.D.
This appeal requires us once again to consider that provision of a homeowner's comprehensive insurance policy which excludes intentional acts of the insured from his personal liability coverage. More particularly, we must here determine the extent to which the conviction of the insured of a criminal offense based on conduct which has resulted in injury to an innocent victim requires application of the doctrine of collateral estoppel, thus foreclosing the victim from relitigating in a subsequent negligence action the question of the intentional nature of the harmful conduct. We are satisfied that application of the doctrine of collateral estoppel in these circumstances is not automatic, that the innocent victim here did have a right to litigate the intent question in his pending civil action against the insured, and hence that the trial judge erred in granting the insurer summary judgment in its declaratory judgment action by which it sought avoidance of its policy obligations to defend and indemnify its insured.
John F. Kelley, plaintiff in the negligence action, was struck in the arm by pellets fired from a shotgun by defendant Ronald *56 Keefe. Kelley sued Keefe to recover for the personal injury he sustained in that incident. That incident was also the basis of an indictment returned against Keefe charging him with atrocious assault and battery. Keefe eventually pleaded guilty to that charge. Keefe resided with his parents and was, therefore, an additional insured under their homeowners comprehensive policy issued by Garden State Fire & Casualty Co. (Garden State). The policy excluded from personal liability coverage "bodily injury or property damage which is either expected or intended from the standpoint of the Insured." Garden State, relying on this exclusion, disclaimed and ultimately contended that the intentional nature of Keefe's act was conclusively determined by the conviction. It accordingly brought this declaratory judgment action against Kelley and Keefe seeking an adjudication of the applicability of the exclusion. The trial judge granted its motion for summary judgment, reasoning that the criminal conviction on its face established the fact of Keefe's intent to have harmed Kelley, thereby precluding both Kelley and Keefe from "looking behind" the guilty plea in order to relitigate the intent question. We are satisfied that the trial judge erred in so holding.
The basic question here raised was first considered by the New Jersey Supreme Court in Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 396-399 (1970). There the insurance company relied on a similar policy exclusion in contending that as a matter of law the conviction of its insured of atrocious assault and battery conclusively established his intent to harm his victim. The court in Burd, while recognizing the evidential status of the conviction in the subsequent negligence action, nevertheless declined to accord it preclusionary effect as against either the insured or the victim. As to the victim, it reasoned that an injured claimant has an interest in a liability policy sufficient to entitle him to be heard on questions of coverage and that while his derivative status vis-a-vis the insured justifies the admission of the conviction as evidence on the coverage question, the conviction nevertheless *57 cannot be regarded as conclusive evidence since "the claimant may not be estopped by a judgment entered in a proceeding begun after he was injured if he was not a party to it." Id. at 397. Nor, the court reasoned further, is the insured himself necessarily collaterally estopped from relitigating the intent question in seeking a defense and indemnification from the insurer. That opportunity must be accorded to him where there is some underlying and residual ambiguity or equivocation in respect of the intent issue vis-a-vis the negligence claim despite the fact of the conviction. For example, in Burd the defendant was convicted of atrocious assault despite his claim of voluntary intoxication. While voluntary intoxication may well not negate the nature and quantum of intent required to support a criminal conviction, it may nevertheless negate intent within the meaning of the policy. At stake, the court noted,
... is the public interest that the victim must be compensated, and the victim's rights being derivative from the insured's, the victim is aided by the narrowest view of the policy exclusion consistent with the purpose of not encouraging an intentional attack. And the insured, in his own right, is also entitled to the maximum protection consistent with the public purpose the exclusion is intended to serve. [at 398-399]
These public policy considerations have been recently reaffirmed in Ambassador Ins. Co. v. Montes, 76 N.J. 477 (1978).
In summary, the court's holding in Burd was that the victim is not precluded by the insured's conviction from relitigating the intent issue both because of public policy considerations and because of the lack of mutuality necessary to support application of the doctrine of collateral estoppel. Neither is the insured himself estopped where, as a factual matter, the question of intent for purposes of the policy may fairly be deemed not to have been fully litigated and established in the criminal action. That factual determination, moreover, requires some reference to the record supporting the conviction.
*58 The civil-criminal intent dichotomy as it implicates a policy exclusion such as that here involved was further explicated by this court in Lyons v. Hartford Ins. Group, 125 N.J. Super. 239 (App.Div. 1973), certif. den. 64 N.J. 322 (1974). In Lyons, which also dealt with a shooting incident, we construed exclusionary language identical to that contained in the policy here. We there pointed out the distinction which must be drawn between intentional acts and intended results, and we held that coverage would obtain if the injurious result of an intentional act was unintended, such as the infliction of personal injury by an act intended only to frighten the victim. Thus, we concluded in Lyons that the carrier there would be liable to defend and indemnify its insured if the jury found, as it might have done on the proofs before it, that its insured "drew his gun with an intent to fire a warning shot over their heads and without an intent to kill or inflict bodily harm." 125 N.J. Super. at 244. Whether or not that conduct, so motivated, would have warranted the criminal conviction of the insured is obviously, therefore, not a dispositive consideration and is no more dispositive where there has been such a conviction than where there has not been.
A shot fired to frighten and not to injure, which we held to be beyond the exclusion in Lyons, is precisely the nature of the claim made here by Kelley. The transcripts of the proceedings in which Keefe pleaded and was sentenced clearly support the proposition that a finder of fact could have so characterized the shooting incident here. In entering his plea, Keefe testified that on the morning in question, three youths, one of whom was Kelley, were throwing snowballs at the car he was driving. He stopped the car and apparently some sort of verbal confrontation between him and the youths ensued. He had been hunting on the previous day and still had his shotgun in the car. He "pulled the gun out" and "fired over their heads but John Kelley got hit." The judge accepted the guilty plea even though he credited that explanation, stating that

*59 The court is satisfied in regard to the firing of the weapon as described by the defendant, calling it a shot over the head, if you will, he is responsible for the ultimate result. The testimony that he gives or statement he gives constitutes a violation of that statute. The court will accept the plea of guilty. .. .
On sentencing, defendant again asserted, "I didn't shoot in the air. I shot over their heads, just that, you know, I forgot to anticipate the spread of the six shot."
We perceive no reason founded in law, logic or public policy which would justify precluding Kelley either from proceeding on this factual theory in his negligence action against Keefe, or from obtaining the benefit of Keefe's right to indemnification from his insurer in the event that theory were proved. Indeed, the holdings in Burd and Lyons firmly support those conclusions.
Garden State contends, however, that despite Burd and Lyons, our holding in New Jersey Mfrs. Ins. Co. v. Brower, 161 N.J. Super. 293 (App.Div. 1978), mandates a contrary result. We disagree. In Brower we recognized that the doctrine of collateral estoppel had been substantially reevaluated and expanded since Burd so as to eliminate mutuality as a necessary prerequisite for its application. Hence, even one who was not a party to the original action may, potentially, be precluded from relitigating a factual issue which was therein fully, fairly, and definitively litigated. See State v. Gonzalez, 75 N.J. 181, 189 192 (1977); United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101 (1977). And cf. Harbor Land Develop. Corp., Inc. v. Mirne, 168 N.J. Super. 538 (App.Div. 1979). See, also, Restatement, Judgments 2d, § 88 (Tent. Draft No. 2, April 15, 1975). While continuing to be bound by the public policy predicate of the Burd holding, we did not regard ourselves in Brower as bound by that element of its rationale which depended upon a perceived mutuality requirement. It is, however, one thing to say that the doctrine of collateral estoppel may be applied despite the lack of mutuality and entirely another to say that it must be. A requirement that the doctrine of collateral estoppel *60 applies in every case of nonmutuality is a patent non sequitur and a gross overstatement of the law. Clearly, whether it should be applied in that situation depends on the nature of the circumstances involved, the underlying equities and an evaluation of implicated public policy. We applied the doctrine in Brower because in that case to do so was both fundamentally fair and factually justified. There the insured had been convicted following a trial at which the victim himself gave critical testimony concerning the insured's intention to inflict the very harm which was the subject of his consequent negligence action. We did not, therefore, regard it as either procedurally or substantively unfair that he be bound by that testimony in his civil action. Furthermore, quite unlike the situation obtaining in Burd and Lyons, in Brower the nature and character of the intent which had to have been found to support the criminal conviction unambiguously and definitively also invoked the policy exclusion. As we said in Brower, "Here, the issue of intent is not beclouded...." 161 N.J. Super. at 300.
Clearly, then, the considerations compelling the application of the doctrine of collateral estoppel in Brower are entirely absent here. Kelley, the victim, insofar as the record before us indicates, had not taken a testimonial position in aid of the conviction inconsistent with his claim in the civil action and hence he should not be precluded from pursuing that claim now. And the question of Keefe's intent to inflict harm is, despite the conviction, certainly a "beclouded" issue.
We would further note that ordinarily a victim ought not to be precluded from relitigating the intent issue when the conviction rests upon a plea of guilty since ordinarily, in that situation, the victim will ordinarily not have been a direct participant in the criminal proceeding nor given an opportunity to be heard therein as a witness even if not as a litigant. More significantly, however, a plea-entry proceeding is not and does not purport to constitute a full and fair litigation of the issues. To the contrary, it represents a defendant's option to forego such *61 litigation and usually for reasons having little or nothing to do with the nature of the issues themselves. Obviously, it would be unfair for the victim of defendant's conduct to be precluded from seeking a civil recovery, by defendant's entirely unilateral and self-interested decision to waive trial of the criminal charge. This is particularly so when the plea is entered pursuant to a plea agreement based on sentencing recommendations.
For these reasons we are persuaded, in light of the factual complex before us, that both legal principles and considerations of public policy preclude application of the doctrine of collateral estoppel here and require that plaintiff in the negligence action be afforded the opportunity to litigate the intent question therein.
Reversed.