MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING
ASSOCIATION *vs.* TROY NORRINGTON, administrator,
& another.[1]

Hampden. May 7, 1985. — August 22, 1985.

Present: WILKINS, ABRAMS, NOLAN & O'CONNOR, JJ.

*Collateral Estoppel. Insurance,* Homeowner's coverage.

The fact that the insured under a homeowners insurance policy which
   excluded from liability coverage "bodily injury or property damage . . .
   which is expected or intended by the insured" had been convicted of
   second degree murder for shooting and killing a woman did not bar the
   administrator of the woman's estate, in a subsequent wrongful death
   action, from litigating the question whether the woman's death had been
   caused by an intentional act of the insured. [753-756]

CIVIL ACTION commenced in the Superior Court Department
on October 5, 1983.

A question of law was reported to the Appeals Court by
*William W. Simons,* J. The Supreme Judicial Court granted a
request for direct review.

*Edward J. McCormick, III, & Robert C. Tommasino* for the
plaintiff.

*M. Trant Campbell* (*Kenneth R. Barba* with him) for Troy
Norrington.

O'CONNOR, J. On May 23, 1982, Massachusetts Property
Insurance Underwriting Association (MPIUA) issued to Sandra
Thomas and the defendant John Person a "Homeowners" insur-
ance policy providing coverage for one year. The policy pro-
vided liability coverage "[i]f a claim is made or a suit is brought
against any insured for damages because of bodily injury or
property damage to which this coverage applies." However,

---

[1] John Person.

the policy excluded from liability coverage "bodily injury or property damage . . . which is expected or intended by the insured."

On July 31, 1982, Person shot Thomas in the neck and killed her. Person was tried for murder, and, although he maintained throughout the trial that the gun discharged by accident, he was convicted of murder in the second degree. Person's appeal is pending in the Appeals Court.

Before Person's criminal trial, Troy Norrington, a defendant in the present action and Thomas's next of kin, sole heir, and administrator of Thomas's estate, brought in the Superior Court a wrongful death action against Person. Norrington's complaint alleged that Person "negligently, or willfully, wantonly and recklessly, or by gross negligence," shot Thomas. MPIUA successfully moved to intervene in that action, alleging that the shooting was intentional and that, for that reason, there was no insurance coverage.[2] After Person's conviction, and in reliance on it, MPIUA filed this declaratory judgment action in the Superior Court seeking a declaration that Thomas's death was caused by Person's intentional act and that, therefore, MPIUA has no obligation either to attempt a settlement of the wrongful death action or to indemnify Person for any judgment against him in that case. A judge of the Superior Court ordered that the two actions be consolidated.

Thereafter, MPIUA moved for summary judgment in this, the declaratory judgment, action, on the ground that, as a result of Person's conviction, Person and Norrington are precluded by the doctrine of collateral estoppel from "relitigating the issue of fact of whether or not Person intended to shoot and kill Sandra E. Thomas, as this fact has been determined at a previous criminal trial." Without ruling on MPIUA's motion,[3] the judge made an interlocutory report to the Appeals

---

[2] Nothing turns on the fact that Sandra Thomas was also a named insured.

[3] Rule 64 of Mass. R. Civ. P., 365 Mass. 831 (1974), provides in pertinent part: "If the trial court is of opinion that an interlocutory finding or order made by it so affects the merits of the controversy that the matter ought to be determined by the Appeals Court before any further proceedings in the trial court, it may report such matter, and may stay all further proceedings except such as are necessary to preserve the rights of the parties."

Court, essentially seeking a determination concerning the proper disposition of the motion for summary judgment. We allowed MPIUA's application for direct appellate review. We hold that, although the doctrine of collateral estoppel could be applied to preclude Person from relitigating issues decided in his criminal trial, collateral estoppel cannot be applied so as to preclude Norrington from litigating such issues. Therefore, MPIUA's motion for summary judgment must be denied.

Until today, this court has adhered to the rule that "a defendant convicted of [a] crime is entitled to retry the question whether he actually committed the crime, when that issue arises in a civil proceeding to which the Commonwealth is not a party; and the criminal judgment is not even evidence against him on the merits of the case." *Minasian* v. *Aetna Life Ins. Co.*, 295 Mass. 1, 3 (1936). Of course, under that rule, not only Person, but Norrington as well, would be entitled to litigate in a subsequent civil action issues decided in Person's criminal trial. However, as we have announced today in *Aetna Casualty & Sur. Co.* v. *Niziolek, ante* 737, 742 (1985), we no longer follow that rule. Now, "a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution." *Id.* Thus, in civil litigation between MPIUA and Person, collateral estoppel could be applied to preclude Person from relitigating issues decided in his criminal trial. It does not follow, however, that Norrington's position is no better than Person's.

Before applying collateral estoppel to preclude a party from relitigating an issue, a court must answer affirmatively three questions: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" *Bernhard* v. *Bank of Am. Nat'l Trust & Sav. Ass'n*, 19 Cal.2d 807, 813 (1942). See *Montana* v. *United States*, 440 U.S. 147, 153 (1979); *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 539 (1985). We assume, without deciding, that, for collateral estoppel purposes, the issue decided by the

jury in the criminal case was identical to the issue on which the existence of insurance coverage depends. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 85 (1984). We also assume, again without deciding, that, although an appeal from Person's conviction is presently pending in the Appeals Court, Person's conviction constitutes a final judgment for collateral estoppel purposes. Thus, all the requirements for issue preclusion against Person, and the first two requirements for issue preclusion against Norrington, have been met. We conclude, however, that issue preclusion cannot be applied against Norrington, because he was neither a party nor in privity with a party to the criminal case.

"It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 327 n.7 (1979). A nonparty to a prior adjudication can be bound by it "only were [the nonparty's] interest was represented by a party to the prior litigation." *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 249-250 (1980). At Person's criminal trial, Person in no sense represented the interests of Norrington (or of Thomas, with whom Norrington was in privity). "[I]t creates no privity between two parties that, as litigants in two different suits, they happen to be interested in proving or disproving the same facts." *Sturbridge* v. *Franklin*, 160 Mass. 149, 151 (1893). Nor did the prosecution represent Norrington's interests. Furthermore, Norrington had no opportunity to participate in the criminal case. See *McCarthy* v. *Daggett*, 344 Mass. 577, 580 (1962).

Clearly, then, Norrington should not be precluded from attempting to show in his wrongful death action against Person that Person did not expect or intend the shooting and the resultant death. See Restatement (Second) of Judgments § 85 illustration 10 (1982);[4] *New England Mut. Life Ins. Co.* v. *Null*,

---

[4] Illustration 10 states: "D inflicts a blow on X as a result of which X dies. D is convicted of intentional homicide. P, administrator of X's estate, brings an action against D for wrongful death, alleging D's act was negligent. I had previously issued a policy of liability insurance to D, insuring liability for D's negligent acts but excluding intentional acts. In P's action against

554 F.2d 896, 901 (8th Cir. 1977); *Clemmer* v. *Hartford Ins. Co.*, 22 Cal. 3d 865, 877 (1978); *Burd* v. *Sussex Mut. Ins. Co.*, 56 N.J. 383, 397 (1970); *Utica Mut. Ins. Co.* v. *Cherry*, 45 A.D.2d 350, 354 (N.Y. 1974), aff'd, 38 N.Y.2d 735 (1975); *State Farm Fire & Casualty Co.* v. *Pildner*, 40 Ohio St. 2d 101, 103-104 (1974). See also *Aid Ins. Co. (Mut.)* v. *Chrest*, 336 N.W.2d 437, 440-441 (Iowa 1983) (criminal defendant's guilty plea not preclusive against nonparty to criminal prosecution even though, under Iowa law, guilty plea has preclusive effect against criminal defendant in subsequent civil litigation, see *Ideal Mut. Ins. Co.* v. *Winker*, 319 N.W.2d 289, 295 [Iowa 1982]); *Rullo* v. *Rullo*, 121 N.H. 299, 300-301 (1981); *Garden State Fire & Casualty Co.* v. *Keefe*, 172 N.J. Super. 53, 59-60 (1980). But see *Travelers Indem. Co.* v. *Walburn*, 378 F. Supp. 860, 862-865 (D.D.C. 1974); *Aetna Life & Casualty Ins. Co.* v. *Johnson*, 673 P.2d 1277, 1280-1281 (Mont. 1984); *New Jersey Mfrs. Ins. Co.* v. *Brower*, 161 N.J. Super. 293, 299 (1978); *State Farm Fire & Casualty Co.* v. *Reuter*, 299 Or. 155, 163-168 (1985).

That conclusion, however, does not resolve this case. If, in his wrongful death action, Norrington succeeds in establishing that Person did not expect or intend to shoot Thomas, Norrington presumably will seek to recover against MPIUA, and, as we have often stated, the right of the injured party to have recourse to the indemnity promised by the insurer rises no higher than the right of the insured. See, e.g., *Cassidy* v. *Liberty Mut. Ins. Co.*, 338 Mass. 139, 143 (1958); *Goldstein* v. *Bernstein*, 315 Mass. 329, 332 (1943); *Klefbeck* v. *Dous*, 302 Mass. 383, 384 (1939). Nevertheless, we conclude that, even though MPIUA could invoke collateral estoppel against Person, MPIUA cannot invoke that doctrine against Norrington.

In keeping with the aforementioned rule, Norrington's substantive right to indemnity from MPIUA is no greater than Person's right; that is, neither Norrington nor Person has a right to indemnity if Person expected or intended Thomas's

D, P is not precluded by the criminal conviction from showing that D's act was negligent rather than intentional. See § 56(1); cf. § 57."

injury. But that does not mean that, because MPIUA could invoke issue preclusion against Person, it can also invoke issue preclusion against Norrington. Issue preclusion is a rule designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Allowing the application of issue preclusion against the insured, but not against the injured person, does no violence to the substantive principle that an injured party succeeds only to the insured's rights against the insurer. In the criminal case, Person had his day in court. Norrington, however, has had no opportunity to litigate the question whether Person expected or intended to shoot Thomas. Fairness requires that he be given that opportunity. By not applying issue preclusion to Norrington, we place no undue burden on MPIUA. MPIUA has not previously been required to litigate the critical coverage question. It seeks only to enjoy the benefit of a finding in a case to which it was not a party.

MPIUA is not entitled to summary judgment. If, in his wrongful death action, Norrington establishes Person's liability, and if Norrington establishes that Person did not expect or intend to injure Thomas, then Norrington will be entitled to a judgment declaring that Thomas's death is covered by MPIUA's insurance policy. We remand this case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*