238 N.J. Super. 619 (1990)
570 A.2d 488
ALLSTATE INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
PETER SCHMITT AND 5738 CORPORATION, D/B/A SMILES COCKTAIL LOUNGE AND RESTAURANT, DEFENDANTS-APPELLANTS, AND JOSEPH SCALERA, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 1990.
Decided February 27, 1990.
*620 Before Judges KING, BAIME and KEEFE.
Richard M. Chisholm argued the cause for appellant Peter Schmitt (Sellar, Richardson, Stuart & Chisolm, attorneys, Richard M. Chisholm of counsel and on the brief).
Gregory Helfrich argued the cause for appellant 5738 Corporation d/b/a/ Smiles Cocktail Lounge and Restaurant (O'Donnell, McCord & Leslie, attorneys, Paul A. Woodford of counsel and on the brief).
John Haschak, II, argued the cause for respondent Allstate Insurance Company (Leary, Bride, Tinker & Moran, attorneys, John Haschak, II, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal requires us to construe exclusionary language contained in a homeowners policy barring coverage for bodily *621 injury "reasonably expected to result" from the insured's criminal acts. At issue is whether this provision relieves the insurer from its obligation to defend and indemnify its insured with respect to harm that is said to be the unintended result of his reckless criminal conduct. An ancillary question is whether a clause excluding coverage for losses caused by the insured's criminal acts, without reference to his intent, is contrary to public policy. Finally, we must determine the preclusive effect, if any, of a criminal judgment in collateral civil proceedings.

I.
We need not recount the facts at length. It is undisputed that sometime in the early morning hours of January 20, 1984 at Smiles Cocktail Lounge and Restaurant (Smiles), Joseph Scalera struck Peter Schmitt's face with a glass. The record is somewhat unclear with respect to the circumstances that precipitated this incident. Apparently, Scalera believed that Schmitt's date, Susan Crane, had inadvertently spilled a drink on him earlier in the evening. When Scalera later confronted Crane, Schmitt attempted to intervene. In their deposition testimony, both Crane and Schmitt stated that, without any menacing movement or provocation by Schmitt, Scalera suddenly thrust his glass into Schmitt's face, causing multiple and severe lacerations. Scalera's account of the incident, as related to the police after his arrest, did not differ markedly from that of Schmitt and Crane. According to Scalera, he struck Schmitt with the glass because "he thought a fight was going to start between the two...."
An indictment was later returned charging Scalera with aggravated assault by "recklessly caus[ing] bodily injury to another with a deadly weapon." N.J.S.A. 2C:12-1b(3). Scalera entered a plea of guilty to the charge. In providing a factual basis for the plea, see R. 3:9-2, Scalera, for the first time, claimed that Schmitt had struck him and that he had merely retaliated by hitting him in the face. According to Scalera, he *622 didn't realize that he had a glass in his hand until it shattered. Scalera was subsequently sentenced to 364 days in the Morris County jail.
On January 17, 1986 Schmitt filed a complaint against Scalera and the 5738 Corporation, the owner of Smiles. In his complaint, Schmitt sought compensatory damages, claiming that Scalera had assaulted him and that Smiles had failed to provide its patrons with adequate security. Scalera immediately notified Allstate Insurance Company (Allstate), asserting that Schmitt's claim was covered under the homeowners policy issued to his mother. Allstate then instituted a declaratory judgment action to resolve the issue of coverage, naming as defendants Scalera, Schmitt and Smiles. Schmitt's action against Scalera and Smiles was stayed pending resolution of the coverage issue.
In its declaratory judgment action, Allstate contended that it was under no obligation to defend or indemnify Scalera for losses resulting from his criminal act. Allstate argued that the homeowners policy issued to Scalera excluded coverage for losses resulting from criminal behavior, without reference to whether or not it was the insured's conscious object or intent to cause the injury sustained by the victim. Schmitt, Scalera and Smiles all claimed that the policy exclusion does not encompass losses that were the unintended results of criminal conduct. They argued that the exclusionary language was applicable only if the injury resulting from the criminal act was one specifically contemplated by the insured. Alternatively, they asserted that any interpretation of the exclusion that did not require the injury be intended by the insured violated public policy.
We need not describe the somewhat unusual procedural context in which the issue of coverage was considered and decided. Suffice it to say, the Law Division judge treated the parties' respective arguments as motions for summary judgment. In an oral opinion, the judge determined that the exclusionary *623 language barred coverage with respect to the insured's criminal acts, whether or not intentional, and whether or not the injury inflicted was specifically contemplated by the attacker. Based upon this construction of the policy exclusion, the Law Division judge deemed Scalera's criminal conviction wholly dispositive of the coverage issue. Allstate was granted summary judgment on this basis.

II.
We first consider whether the policy exclusion bars coverage for unintended bodily injury resulting from an insured's criminal act. The operative language reads as follows:
Exclusions  Losses We Do Not Cover

We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person. [Emphasis in original].
Both Schmitt and Smiles contend that this clause excludes coverage only with respect to injuries that are the intended result of either a criminal or intentional act. Stated somewhat differently, they claim that the policy exclusion is confined to instances where the insured intentionally injures his victim and subjectively desires to cause the type of harm actually inflicted. In support of their argument, they heavily rely upon Ambassador Insurance Company v. Montes, 76 N.J. 477, 388 A.2d 603 (1978), and Lyons v. Hartford Ins. Group, 125 N.J. Super. 239, 310 A.2d 485 (App.Div. 1973), certif. den. 64 N.J. 322, 315 A.2d 411 (1974).
We find no basis for construing the policy language so narrowly. Initially, we note that both Ambassador Insurance and Lyons are inapposite. The principal issue presented in Ambassador Insurance was whether "public policy prohibits indemnity for the civil consequences of [an insured's] intentional wrongdoing." 76 N.J. at 481, 388 A.2d 603. Despite the disarming simplicity of the question posed, Ambassador Insurance was decided by a divided court, and the appeal produced three opinions.
*624 Emphasizing that none of the parties relied upon any exclusionary clause or other pertinent limitation in the policy, id., 76 N.J. at 482, 388 A.2d 603, the majority concluded that there was no public policy prohibition against indemnity where the wrongdoer is not benefitted and an innocent third person receives the protection afforded by the insurance. Id. at 482-483, 388 A.2d 603. The majority held that when a comprehensive general liability insurance policy does not have an exclusion provision for the insured's intentional acts, the insurance company is responsible to an injured person for those sums which the insured is legally obligated to pay such person for causing him personal injuries, provided the insured in no way benefits. Ibid.
Justice Pashman filed a concurring opinion in which Justice Handler joined. Id. at 486, 388 A.2d 603. They agreed that public policy was not offended where an innocent party obtains the benefit of policy coverage accorded to an insured who has intentionally harmed him. Id. at 486, 388 A.2d 603. In addition, however, they found that language contained in the policy barred coverage only with respect to where the "injury was the intended result of an intentional act." Id. at 489, 388 A.2d 603. In that respect, they pointed to the policy definition of the word "occurrence" as meaning "an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Id. at 487, 388 A.2d 603. The concurring Justices construed this definition as excluding coverage only where the insured intends to injure, i.e., where the insured "subjective[ly] desire[s]" to inflict injury. Id. at 489, 388 A.2d 603.
Justice Clifford filed a dissenting opinion. Id. at 492, 388 A.2d 603. Like Justices Pashman and Handler, the dissent criticized the majority for ignoring the definitional section of the policy. Id. at 493-494 n. 11, 388 A.2d 603. However, Justice Clifford departed from the concurring Justices based upon his view that the definition of "occurrence" excluded coverage for injuries intended by the insured and those that *625 "are substantially certain to result from [the insured's intentional acts]." Id. at 494, 388 A.2d 603, quoting Restatement, Torts 2d, § 8A (1965).
Whatever else may be said about the reach of Ambassador Insurance, it is plain that none of the three opinions rendered concerned an exclusion in any way similar to that contained in the Allstate policy in this case. As we have stressed, the only question decided by the majority was whether public policy prohibited an innocent third party from obtaining the benefit of an insured's policy in the context of the insured's wrongful intentional acts. Id. at 482 n. 2, 388 A.2d 603. While the concurring and dissenting opinions went further and considered whether the policy language barred coverage for the unintended consequences of the insured's intentional wrongful acts, id. at 482, 492, 388 A.2d 603, the differing interpretations of the respective Justices pertained to a clause entirely unlike the exclusion which is the subject of the present dispute.
Lyons v. Hartford Ins. Group is similarly distinguishable. There, we had occasion to construe an insurance clause that excluded coverage with respect to "bodily injury which is either expected or intended from the standpoint of the insured." 125 N.J. Super. at 244, 310 A.2d 485. Synthesizing the existing authority in other jurisdictions, we found the general rule was that "coverage exists under insuring and exclusion clauses identical or similar to the ones involved ... for the unintended results of an intentional act, but not for damages assessed because of an injury which was intended to be inflicted." Id. at 245, 310 A.2d 485. We noted, however, that "where the intentional act has resulted in intended injury, even where the injury is different or more severe than intended, coverage has been denied." Id. at 246, 310 A.2d 485. We thus concluded that the pivotal question was whether the insured subjectively intended to inflict injury. Id. at 247, 310 A.2d 485. If he did, we said that the exclusion was applicable. Ibid. If injury was not intentionally inflicted, the clause was said not to be applicable *626 and, thus, the protection of the policy was available to the injured third party. Ibid.
We stress that the exclusion contained in the Allstate policy is thoroughly distinct from that considered by us in Lyons. Conspicuously absent are the words "intended" and "from the standpoint of the insured," words that can reasonably be said to connote a subjective element hinging upon the actual desire to inflict injury harbored by the insured. In contrast, the Allstate exclusion is not altogether premised upon a subjective intent to injure another. Instead, the factual predicate to the exclusion is either the commission of a crime, whether or not intentional, or the doing of an intentional act.
In addition, the exclusion requires that the bodily harm inflicted or the property damage caused must be of a type "which may reasonably be expected to result from the intentional or criminal acts of the insured person or which is in fact intended by an insured person." We reject the contention that these phrases add a subjective element to the exclusion and require a conscious desire to inflict injury upon another. In our view, the words "reasonably ... expected" were intended to serve as a convenient clamp or restriction on the exclusionary clause's otherwise boundless applicability. The phrase was designed to insure that the policy's protection would be accorded to idiosyncratic, unforeseeable or wholly attenuated consequences of the insured's criminal or intentional act. As we read the policy language, the exclusion was not intended to apply to the remote or highly extraordinary or improbable consequences of the insured's criminal or intentional conduct.
In reaching this conclusion, we emphasize that the exclusionary clauses are phrased in the disjunctive. Thus, coverage is barred where the bodily harm inflicted or the property damage produced may have either "reasonably [been] expected to result from the intentional or criminal acts of" the insured "or which [was] in fact intended by an insured person." Clearly, the latter phrase, "or which [was] in fact intended," requires a *627 subjective or conscious desire by the insured to inflict bodily harm or cause property damage. Were we to construe the disjunctive phrase, "reasonably be expected," to also require a subjective intent on the part of the insured, the clause would be wholly redundant.
Our interpretation of the exclusion comports with the policy language and the probable intent of the parties. Of course, we recognize that insurance policies "are contracts of adhesion, the terms of which are not customarily bargained for," and, thus, we "have a special responsibility to prevent the marketing of policies that provide unrealistic and inadequate coverage." Sparks v. St. Paul Ins. Co., 100 N.J. 325, 341, 495 A.2d 406 (1985). We also acknowledge that the strong public policy concerns that generally preclude an insurer from agreeing to indemnify an insured against the civil consequences of his own willful criminal act "should not come into play when the wrongdoer is not benefitted and an innocent person receives the protection afforded by the insurance." Ambassador Insurance Company v. Montes, 76 N.J. at 483, 388 A.2d 603.
This much conceded, we are entirely satisfied that the policy here provided neither "unrealistic nor inadequate coverage." Werner Industries, Inc. v. First State Ins. Co., 112 N.J. 30, 38, 548 A.2d 188 (1988). Moreover, the reasonable "expectancies of the parties to this insurance contract were" that the foreseeable consequences of any intentional tort or criminal act would be excluded from coverage. Ambassador Insurance Company v. Montes, 76 N.J. at 496, 388 A.2d 603 (Clifford, J., dissenting). The canons of construction "should not be used as excuse to read into a private agreement that which is not there, and that which people dealing fairly with one another could not have intended." Tomaiuoli v. United States Fidelity and Guar. Co., 75 N.J. Super. 192, 207, 182 A.2d 582 (App.Div. 1962). Our goal always is to "justly fulfill the reasonable expectations of the assured in the purchase of his insurance policy." Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 400, 267 A.2d 7 (1970) (Jacobs, J., dissenting). We thus construe the exclusion, in *628 accordance with the unambiguous language employed, as barring coverage with respect to the reasonably foreseeable consequences of the insured's criminal act.
So interpreted, we are firmly convinced that the Allstate policy exclusion was applicable and excepted from coverage the injury inflicted by reason of Scalera's assaultive behavior. Appellants do not contend, nor could they, that the injury sustained by Schmitt was either remote or extraordinary in light of the nature of Scalera's violent attack. It cannot fairly be argued that the multiple lacerations suffered by Schmitt were something other than the natural and probable result of Scalera's vicious assault. In our view, the exclusion, reasonably construed, was clearly applicable.

III.
We are also unpersuaded by the argument that the exclusion contained in the Allstate insurance contract offends public policy. As we pointed out previously, one of the predicates for application of the exclusion is the commission of a criminal act by the insured. The words "criminal act" are not modified by any descriptive culpability requirement. In other words, the exclusion is applicable without reference to the mental state of the insured when he committed the crime. In that respect, our Code of Criminal Justice (N.J.S.A. 2C:1-1 to 98-4) generally defines criminal conduct in terms of a "voluntary" act or "omission," see N.J.S.A. 2C:2-1, coupled with the requisite state of culpability, i.e., purposeful, knowing, reckless or negligent conduct, N.J.S.A. 2C:2-2b(1), (2), (3) and (4). Here, Scalera was convicted of aggravated assault by "recklessly causing bodily injury to another with a deadly weapon." N.J.S.A. 2C:12-1b(3). Under the Code, a person acts "recklessly" when he "consciously disregards a substantial and unjustifiable risk...." N.J.S.A. 2C:2-2b(3). "The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to *629 him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Ibid.
Against that backdrop, Schmitt and Smiles assert that, as a matter of public policy, a homeowners insurance contract may not exclude coverage for liability caused by the reckless but unintentional criminal act of its insured. Stripped to its essentials, the thrust of their argument is that an insurance carrier is obliged to afford protection against injuries inflicted by criminally reckless conduct.
While our research discloses no reported New Jersey decision dealing with the precise issue raised, we have no hesitancy in holding that the exclusion contained in the Allstate policy does not run afoul of any identifiable public policy concern. We consider appellants' contention within the analytical framework suggested in Allstate Ins. Co. v. Malec, 104 N.J. 1, 6, 514 A.2d 832 (1986), where our Supreme Court sustained an exclusion barring coverage for liability arising out of the insured's intentional act. Initially, the exclusion is not in conflict with any statute or statutory policy. See, e.g., Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373, 225 A.2d 570 (1966). Nor does the policy provision counter statutorily mandated coverage. See American Home Assurance Co. v. Hartford Ins. Co., 190 N.J. Super. 477, 485-486, 464 A.2d 1128 (App.Div. 1983). There is no provision in any of the statutes that specifically prohibits the exception in the Allstate policy. Nor do we read any of the statutes as requiring coverage for liability for reckless criminal acts of the insured-tortfeasor that cause harm to a third party.
We note that clauses excluding coverage for losses caused by intentional acts are common in various types of insurance contracts and are generally accepted as valid limitations. See, e.g., Ruvolo v. American Cas. Co., 39 N.J. 490, 496, 189 A.2d 204 (1963); see also Allstate Ins. Co. v. Malec, 104 N.J. at 10-11, 514 A.2d 832. Prior to our Supreme Court's decision in Ambassador Insurance, New Jersey consistently recognized *630 that it would violate public policy to permit the proceeds of a liability policy issued to an insured to be paid to the innocent victims of an insured's intentional criminal conduct. See Malanga v. Manufacturers Casualty Insurance Co., 28 N.J. 220, 225, 146 A.2d 105 (1958); Lyons v. Hartford Ins. Group, 125 N.J. Super. at 244-245, 310 A.2d 485; Oakes v. State Farm Fire & Casualty Co., 137 N.J. Super. 365, 368, 349 A.2d 102 (App.Div. 1975), certif. den. 70 N.J. 142, 358 A.2d 189 (1976). Although Ambassador Insurance modified that prior settled rule, it did not declare that an exclusion from coverage for the insured's intentional wrongdoing violated public policy. See N.J. Manufacturers Insurance Co. v. Brower, 161 N.J. Super. 293, 300, 391 A.2d 923 (App.Div. 1978). As we have mentioned, any confusion in that respect was eradicated by our Supreme Court's subsequent decision in Allstate Ins. Co. v. Malec, which expressly upheld the validity of such an exclusion.
We are concerned here with an exclusion which, in this case, bars coverage for the insured's reckless criminal conduct. In the criminal law, "[r]ecklessness is generally distinguished from knowledge [and purpose] by the degree of certainty involved." Cannel, Title 2C: New Jersey Criminal Code Annotated, at 79 (1990). Knowledge and purpose involve near certainty. Ibid. Recklessness involves something less than certainty. As is evident from the Code's definition of "reckless," cited previously, reckless behavior requires conscious risk-taking. It "involves the conscious disregard of a known risk," id. at 80, a "gross deviation" from reasonable conduct, N.J.S.A. 2C:2-2b(3). We discern no public policy prohibition against excluding coverage for risks attendant to reckless criminal behavior. Instead, we hold that in the context of homeowners insurance, a liability insurer may, by specific exclusion, except from coverage injuries that result from criminally reckless conduct.
One further matter deserves attention before we leave the subject. Although the specific issue presented here is novel, our holding is not too different from decisions in this State and *631 elsewhere which have permitted intent to harm to be found as a matter of law in cases involving assaults and other analogous acts. See, e.g., Lyons v. Hartford Ins. Group, 125 N.J. Super. at 246-247, 310 A.2d 485; Oakes v. State Farm Fire & Casualty Co., 137 N.J. Super. at 367, 349 A.2d 102; see also Pendergraft v. Commercial Standard Fire & Marine Co., 342 F.2d 427 (10th Cir.1965); Stout v. Grain Dealers Mutual Ins. Co., 307 F.2d 521 (4th Cir.1962); Travelers Indemnity Co. v. Walburn, 378 F. Supp. 860 (D.D.C. 1974); Caspersen v. Webber, 298 Minn. 93, 213 N.W.2d 327 (1973); McDonald v. United Pacific Ins. Co., 210 Or. 395, 311 P.2d 425 (1957). These decisions and others are illustrative of the recognition the courts have given to exclusions excepting criminal conduct from coverage. We do not suggest that they are in any sense on point. They are not. We cite them merely to emphasize that exclusions have long barred coverage with respect to assaultive criminal behavior, sometimes without reference to the insured's actual intent to injure another. Against this historical background, we find the notion hardly startling that a policy exception excluding risks attendant to criminal behavior is consistent with public policy.
We emphasize the limited contours of our opinion. This case involves an exclusion contained in a homeowners policy. We are thus not concerned with legislation involving automobiles or other forms of insurance that must be construed "with liberality in effecting the broadest protection ... of accident victims consistent with the language of the pertinent statute." Allstate Ins. Co. v. Malec, 104 N.J. at 6, 514 A.2d 832, quoting Motor Club of Am. Ins. Co. v. Phillips, 66 N.J. 277, 293, 330 A.2d 360 (1974). So too, the issue presented here relates solely to the applicability of the exclusion to criminally reckless conduct. We need not, and do not, address whether the policy exclusion might properly be applied to some lesser state of culpability, either set forth in the Code or elsewhere. We are content to decide only the case before us and to limit our holding to no more than the circumstances require.

*632 IV.
As we noted in our recital of the facts, the Law Division judge apparently considered Scalera's criminal conviction to be dispositive of the ultimate issue to be decided under the policy exclusion, i.e., whether the insured committed a criminal act. Appellants contend that the Law Division judge erred by according the judgment of conviction a preclusive effect.
We disagree. The collateral estoppel effect of a judgment of conviction in subsequent civil proceedings pertaining to insurance coverage has received a somewhat uneven treatment in our cases. In Burd v. Sussex Mut. Ins. Co., our Supreme Court held that a victim of a violent crime is not precluded by the insured's conviction from relitigating the issue of the insured's intent both because of public policy considerations and the lack of mutuality necessary to support application of the doctrine of collateral estoppel. 56 N.J. at 398-399, 267 A.2d 7. However, in N.J. Manufacturers Insurance Co. v. Brower, we recognized that the doctrine of collateral estoppel had been substantially reevaluated and expanded since Burd so as to eliminate mutuality as a necessary prerequisite for its application. 161 N.J. Super. at 298-299, 391 A.2d 923. Hence, we said that even one who was not a party to the original criminal action may, potentially, be precluded from relitigating a factual issue which was therein fully, fairly and definitively litigated and decided. Ibid. See State v. Gonzalez, 75 N.J. 181, 189, 380 A.2d 1128 (1977); United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977). Finally, in Garden State Fire & Cas. Co. v. Keefe, 172 N.J. Super. 53, 410 A.2d 718 (App.Div. 1980), we refined our decision in Brower, noting it is "one thing to say that the doctrine of collateral estoppel may be applied despite the lack of mutuality and entirely another to say that it must be." 172 N.J. Super. at 59, 410 A.2d 718. See also Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 25, 483 A.2d 402 (1984). We said that whether collateral estoppel should be applied "depends on the nature of the circumstances involved, the underlying *633 equities and an evaluation of implicated public policy." Garden State Fire & Cas. Co. v. Keefe, 172 N.J. Super. at 60, 410 A.2d 718.
We need not dwell upon the subject. The point to be stressed is that we are not concerned here with what, if any, preclusive effect a judgment of conviction is to be accorded with respect to a party's attempt to relitigate the issue of intent. As we pointed out previously, the policy exclusion at issue here does not require, as a factual predicate, that the insured intentionally harmed the victim. The exclusion contained in the Allstate policy depends instead on the insured's commission of a criminal act and the consequent infliction of harm upon the victim as the proximate result of his misconduct.
In this context, we are convinced that where the insured has been convicted of a crime, either by reason of his plea of guilty or following a trial, he and others in privity with him should be collaterally estopped from relitigating the fact that he committed the criminal offense. In short, the fact of his guilt of the crime should not be retried. A judgment of conviction is conclusive evidence of the insured's guilt.[1] No independent examination of the underlying fact should be undertaken in order to ascertain his guilt of the crime. Although a conviction may or may not be conclusive evidence of the underlying facts, it is to be accorded preclusive effect with respect to the insured's commission of the crime.
Applying that principle here, the judgment of conviction constituted conclusive and binding evidence of Scalera's commission of a criminal act. Since there was no dispute that Schmitt's injuries were of a type reasonably expected to result from Scalera's criminal conduct, the policy exclusion was properly applied.
*634 The summary judgment in favor of Allstate is, therefore, affirmed.
NOTES
[1] Of course, we are not concerned here with Evid.R. 63(20), which permits admission of a judgment of conviction of a crime to prove "any fact essential to sustain the judgment."