245 N.J. Super. 539 (1991)
586 A.2d 307
NICHOLAS SASSANO AND CARMELLA SASSANO, PLAINTIFFS-RESPONDENTS,
v.
BLT DISCOVERY, INC. AND NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANTS-APPELLANTS, AND ROGER WASYLUK AND ROBERT GUASTELLA, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1990.
Decided January 31, 1991.
*542 Before Judges PETRELLA, BILDER and BROCHIN.
Marie P. Simonelli argued the cause for appellant BLT Discovery, Inc. (Lampf, Lipkind, Prupis, Petigrow & Labue, attorneys; Marie P. Simonelli, on the brief).
Mark L. Antin argued the cause for appellant New Jersey Property-Liability Insurance Guaranty Association (Gennet & Kallmann, attorneys; Samuel A. Gennet, of counsel, Mark L. Antin, on the brief).
Nicholas R. Doria argued the cause for respondents (Sassano & Doria, attorneys; William P. Cleary, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
In this case we hold that a jury verdict in a criminal case finding a defendant guilty of arson is not a final judgment of conviction and is therefore not admissible in a civil case to prove that the defendant committed the arson.
*543 Plaintiffs Nicholas and Carmella Sassano leased premises in a building which they owned to defendant BLT Discovery, Inc. for the operation of a nightclub. Fire damaged the building. The Sassanos alleged that two of BLT's employees, Robert Guastella, BLT's president and the owner of seventy percent of BLT's capital stock, and Roger Wasyluk, BLT's nightclub manager, had intentionally set the fire. To recover for the damage to their building, the Sassanos sued BLT, Guastella, Wasyluk, and New Jersey Property-Liability Insurance Guaranty Association, the statutory successor to BLT's fire insurer.
BLT, Guastella, and Wasyluk denied responsibility for the fire. BLT crossclaimed against Insurance Guaranty Association, demanding indemnification for its fire losses in accordance with the terms of its policy. Insurance Guaranty Association disclaimed liability because of Guastella's and Wasyluk's alleged arson and crossclaimed against Guastella and Wasyluk.
While the Sassanos' civil suit was pending, Guastella and Wasyluk were indicted and tried for arson. A jury found them both guilty. Before sentencing, Guastella died, and the prosecutor administratively dismissed the indictment against him. Wasyluk was sentenced and, while the present civil suit was awaiting trial, he appealed his conviction. In an unreported decision, this court reversed Wasyluk's arson conviction and remanded the case for a new trial on the ground that the trial court had erroneously precluded the defendants from arguing for an interpretation of the evidence which, if accepted by the jury, would have created a reasonable doubt about the defendants' guilt. Subsequent to the entry of final judgment in the present civil suit, the trial court dismissed the indictment against Wasyluk on the prosecutor's motion because there was "insufficient admissible evidence to enable a conviction beyond a reasonable doubt."
In the present civil action, BLT moved before trial to strike Insurance Guaranty Association's arson defense. A judge other than the one who later presided at the trial heard the motion. *544 He assumed for the purpose of the motion that Guastella and Wasyluk had intentionally set the fire. But he held that, so long as none of the proceeds benefited the arsonists, Insurance Guaranty Association was obligated to compensate BLT in order to avoid harm to BLT's creditors and to its thirty-percent stockholder who was not implicated in setting the fire. Pursuant to an order entered on BLT's motion, an appraisal of BLT's fire loss was conducted in accordance with the terms of its insurance policy. BLT's personal property destroyed by the fire was assessed at $102,784.00 and its property "improvements and betterments" destroyed by the fire, at $77,105.00. The assessment of BLT's entire fire loss totaled $179,889.00.
At the civil trial, a jury was waived. The trial judge recognized that the pendency of Wasyluk's appeal from his criminal conviction precluded use of that conviction as proof that he was responsible for setting the fire. See Sorbello v. Mangino, 108 N.J. Eq. 292, 295, 155 A. 6 (Ch. 1931); cf. State v. Eddy, 189 N.J. Super. 22, 458 A.2d 522 (Law Div. 1982) (holding that conviction on appeal is not admissible to impeach witness's credibility). However, the judge accepted the guilty verdict against Guastella as a "conviction," and held that, for purposes of the present case, Guastella's estate and BLT were estopped from denying that he had set the fire. The trial judge also held that, because the fire had been caused by the misconduct of a BLT employee, BLT's lease with the Sassanos required it to compensate them for the fire damage.
The trial judge found the amount of the fire damage sustained by the Sassanos was $185,000, the cost of repairing their building. He required Insurance Guaranty Association to pay the Sassanos the fire insurance proceeds which would otherwise have been payable to BLT under its policy. The trial judge also ruled that Guastella's estate was liable to indemnify Insurance Guaranty Association for its payments under the policy. The Sassanos' claim against Wasyluk was dismissed with prejudice because no admissible evidence was offered at trial to show that he had caused the fire. Insurance Guaranty Corporation *545 had earlier dismissed its crossclaim against Wasyluk without prejudice.
Although the Sassanos were not named insureds, the trial court ordered their claim of damage to the structure of their building assessed by the same insurance appraisers who had assessed BLT's fire losses. Without waiving any objections to that procedure, the Sassanos and Insurance Guaranty Association stipulated that the damage to the building structure amounted to $80,000.00. The trial judge viewed that amount as superseding the appraisers' $77,105.00 assessment of the damage to BLT's "betterments and improvements" of the building's structure. He further found that the appraisers' $102,784.00 assessment for BLT's loss of its personal property was subject to a $100,000 policy limit on that coverage. The policy as interpreted by the trial judge was also subject to a single $100 deductible. He therefore held that BLT's insured loss was $179,900, and that Insurance Guaranty Corporation was required to pay that entire amount directly to the Sassanos.
Insurance Guaranty Association and BLT have both appealed from the resulting judgment, and their separate appeals have been consolidated.
Insurance Guaranty Association contends that Guastella's arson should bar any recovery on the policy or, alternatively, that since Guastella owned seventy percent of the stock of BLT, any recovery should be limited to thirty percent of the insured loss. In addition, Insurance Guaranty Corporation argues that BLT failed to prove its claim and that the trial judge had no legal authority to order an appraisal of damage to the structure of the building or to require the insurer to pay for that damage.
BLT argues that the trial judge erred in admitting the jury verdict against Guastella as evidence that he set the fire. Alternatively, it contends that even if the verdict was admissible evidence, Guastella's conduct is not imputable to the corporation. It also argues that it had no obligation under its lease *546 to insure the Sassanos' building or pay for repairing it, that the court erred in ordering the insurance proceeds paid to the Sassanos, and that the Sassanos failed to prove their damages.
For the following reasons, we reverse and remand the case for a new trial.
R. 3:21-5 defines the requisites of a judgment of conviction in a criminal case as follows:
The judgment shall be signed by the judge and entered by the clerk. A judgment of conviction shall set forth the plea, the verdict or findings, the adjudication and sentence, a statement of the reasons for such sentence, and a statement of credits received.... A copy of the judgment shall be forwarded to all parties and their counsel by the clerk forthwith upon entry.
As we pointed out in State v. Moore, 178 N.J. Super. 417, 427, 429 A.2d 397 (App.Div.), certif. denied, 87 N.J. 406, 434 A.2d 1083 (1981), "under R. 3:21-5, a judgment of conviction occurs when the judge signs the sentencing order and it is entered by the clerk." See State v. Womack, 206 N.J. Super. 564, 570, 503 A.2d 352 (App.Div. 1985), certif. denied, 103 N.J. 482, 511 A.2d 658 (1986) (stating that "the judgment is prepared by the clerk and signed by the judge and provides `finality'"); State v. Robinson, 198 N.J. Super. 602, 603, 487 A.2d 1304 (Law Div. 1984) (holding that "the judgment is entered following sentencing forthwith by the clerk"); State v. L.R., 167 N.J. Super. 364, 367-368, 400 A.2d 877 (Law Div. 1979) (stating that "[a] `conviction' is merely an intermediate step. It is that stage in a criminal proceeding at which a finding of guilt is made by the court or jury as a result of a trial on the merits or the defendant's entry of a plea of guilty.... A `judgment of conviction' is a formal document which includes the defendant's plea, the verdict and the court's sentence"); cf. State v. Pratts, 145 N.J. Super. 79, 93-94, 366 A.2d 1327 (App.Div. 1975), aff'd o.b., 71 N.J. 399, 365 A.2d 928 (1976) (holding that having signed the judgment of conviction, the judge thereafter had no authority to increase a legal sentence). The verdict against Guastella finding him guilty of arson was not a final, formal *547 determination that he was guilty of aggravated arson. It was not a final judgment of conviction.[1]
But for Evid.R. 63(20), both a verdict of guilty and a judgment of conviction would be inadmissible hearsay. Evid.R. 63. By its explicit terms, however, Evid.R. 63(20) authorizes admitting a "final judgment against a party adjudging him guilty of an indictable offense ... as against that party to prove any fact essential to sustain the judgment." (Emphasis added.) Because the verdict against Guastella was not a "final judgment" of conviction, it was not admissible as evidence that he committed the arson, and it could not operate as the basis for collateral estoppel. Andersen v. Well-Built Homes of Central Jersey, Inc., 69 N.J. Super. 246, 254, 174 A.2d 216 (App.Div. 1961); Margolis v. Clawans, 54 N.J. Super. 472, 476, 149 A.2d 257 (App.Div. 1959); Charlie Brown of Chatham, Inc. v. Board of Adjustment, 202 N.J. Super. 312, 327, 495 A.2d 119 (App.Div. 1985); see City of Plainfield v. Pub. Serv. Elec. and Gas Co., 82 N.J. 245, 257-258, 412 A.2d 759 (1980). There was therefore no legal basis in the record for the trial court's finding that Guastella's arson was the cause of the damage to *548 the Sassanos' building.[2]
The trial court's imposition of liability on BLT and on Guastella's estate was premised entirely on its finding that Guastella had set the fire. In an effort to sustain the judgment against BLT on an alternative basis, the Sassanos argue that paragraph 13 of their lease obligated BLT to insure the building against fire for their benefit and to repair any fire damage, even if the fire was not the fault of any BLT employee. That paragraph reads as follows:
If the premises shall be partially damaged by fire, the elements or other casualty, the Landlord shall repair the same as speedily as practicable, but the Tenant's obligation to pay the rent hereunder shall not cease.... However, if, in the opinion of the Landlord, the premises be totally destroyed or so extensively or substantially damaged as to require practically a rebuilding thereof, then the rent shall be paid up to the time of such destruction and then and from thenceforth this lease shall come to an end. In no event however, shall the provisions of this clause become effective or be applicable, if the fire or other casualty and damage shall be the result of the carelessness, negligence or improper conduct of the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors. In such case, the Tenant's liability for the payment of the rent and the performance of all the covenants, conditions and terms hereof on the Tenant's part to be performed shall continue and the Tenant shall be liable to the Landlord for the damage and loss suffered by the Landlord. If the Tenant shall have been insured against any of the risks herein covered, then the proceeds of such insurance shall be paid over to the Landlord to the extent of the Landlord's costs and expenses to make the repairs hereunder, and such insurance carriers shall have no recourse against the Landlord for reimbursement.
In our view, that paragraph means that BLT assumed liability for repairs to the building only if the building was damaged as the result of the carelessness, negligence, or misconduct of BLT, its agents or employees. The "risks" referred to in the last quoted sentence of the paragraph refer to the risks of *549 damage for which the preceding sentences make the tenant liable. Any insurance which BLT may have becomes a fund from which the landlord may satisfy its claim against its tenant if the tenant is liable for that claim. The alternative interpretation of the last sentence of the quoted paragraph, that the tenant has the discretion, but not the obligation, to maintain casualty insurance for its landlord's benefit, insuring the Sassanos even against losses for which it was not liable, would make no commercial sense. We therefore reject the Sassanos' argument. In our view, they had no right to look to anyone but themselves to purchase fire insurance.
Our conclusion that there was no basis for finding that Guastella set fire to the Sassanos' building moots Insurance Guaranty Association's argument that because of its arson defense, it had no obligation to pay any part of BLT's loss or, alternatively, that its obligation should have been limited to paying no more than thirty percent of that loss. However, the Sassanos and Insurance Guaranty Association may have refrained from offering other evidence of Guastella's culpability because they mistakenly believed that the guilty verdict rendered against him was either evidentiary or conclusive. If competent evidence is available to show that Guastella was responsible for the fire, the Sassanos and Insurance Guaranty Corporation will be free to offer it at a retrial. Because no evidence was introduced to show Wasyluk's culpability, we hold that the trial court's dismissal of the Sassanos' claim against him for lack of evidence precludes their making any further attempt to prove that claim. However, Insurance Guaranty Association voluntarily dismissed its claim against Wasyluk without prejudice; relitigation of Insurance Guaranty Association's claim will therefore not be barred.[3]
*550 We agree with Insurance Guaranty Association that there was no legal basis for the trial court's ordering Insurance Guaranty Association and the Sassanos to have the fire damage to the building structure assessed by the insurance appraisers. If Guastella or Wasyluk is not proved to have set the fire which burned the Sassanos' building, the insured loss for which BLT will be entitled to recover from Insurance Guaranty Association should be based on the assessment conducted pursuant to the court's order that was entered on BLT's motion. The remaining issues are either moot or clearly without merit. R. 2:11-3(e)(1)(E).
The judgment appealed from is reversed, and the case is remanded to the trial court for proceedings not inconsistent with this opinion.
NOTES
[1] For purposes of a civil action, a judgment of conviction in a criminal trial is sometimes treated as evidence tending to prove that the defendant committed the crime of which he was convicted and sometimes as the basis for a collateral estoppel which conclusively establishes his commission of the crime. See State v. Gonzalez, 75 N.J. 181, 186, 380 A.2d 1128 (1977); Prudential Property & Casualty, Ins. Co. v. Kollar, 243 N.J. Super. 150, 578 A.2d 1238 (App.Div. 1990); Allstate Ins. Co. v. Schmitt, 238 N.J. Super. 619, 632-633, 570 A.2d 488 (App.Div. 1990). Compare Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 396-397, 267 A.2d 7 (1970) (stating that a criminal judgment is evidentiary, not necessarily conclusive) and Garden State Fire & Casualty Co. v. Keefe, 172 N.J. Super. 53, 56-57, 410 A.2d 718 (App.Div.), certif. denied, 84 N.J. 389, 420 A.2d 317 (1980) (same) with Allstate Ins. Co. v. Schmitt, 238 N.J. Super. 619, 633, 570 A.2d 488 (App.Div. 1990) (holding that a fact established by a criminal judgment was to be given conclusive effect under collateral estoppel doctrine) and New Jersey Mfrs. Ins. Co. v. Brower, 161 N.J. Super. 293, 299-300, 391 A.2d 923 (App.Div. 1978) (same) and Hyland v. Kehayas, 157 N.J. Super. 258, 263-265, 384 A.2d 902 (App.Div. 1978) (same).
[2] Furthermore, the Appellate Division's opinion reversing the criminal conviction of Guastella's co-defendant, Wasyluk, raised a serious question about the merits of the judgment against Guastella. Consequently, even if Guastella had survived long enough for a judgment of conviction to have been entered on the verdict against him, once Wasyluk's judgment had been reversed, the trial court should not have accepted Guastella's conviction as proof that he committed the arson.
[3] If Guastella or Wasyluk is proved to have intentionally started the fire, the question will again arise whether arson committed by either or both of them will relieve the insurer, in whole or in part, from indemnifying BLT for the loss. New Jersey law is clear that if the insured is an individual who intentionally sets fire to his own property, an insurer will be relieved from having to compensate him for the resulting fire damage. Olesak v. Central Mut. Ins. Co., 215 N.J. Super. 155, 158-159, 521 A.2d 849 (App.Div. 1987). The more difficult question is the availability and effect of an arson defense where the insured is a corporation. Compare Miller & Dobrin Furniture Co. v. Camden Fire Ins. Co., 55 N.J. Super. 205, 218-219, 150 A.2d 276 (Law Div. 1959) (holding that arson committed by a dominant, fifty-percent stockholder was attributable to the corporation) and Italian Fisherman v. Commercial Union Assurance Co., 215 N.J. Super. 278, 282, 521 A.2d 912 (App.Div.), certif. denied, 107 N.J. 152, 526 A.2d 211 (1987) (holding that arson committed by stockholder who was the principal managing agent precluded recovery by the corporation); Liberty Mutual Fire Ins. Co. v. Kahlaid, Inc., 199 N.J. Super. 494, 498, 489 A.2d 1231 (App.Div.), certif. denied, 101 N.J. 300, 501 A.2d 958 (1985) (holding that the insurer did not assume the risk of paying an innocent secured creditor if the insured's sole stockholder intentionally caused the loss) with Howell v. Ohio Casualty Ins. Co., 130 N.J. Super. 350, 354, 327 A.2d 240 (App.Div. 1973) (holding that where one spouse's arson destroyed the house which both spouses owned as tenants by the entireties, the innocent spouse was entitled to recover under their fire insurance policy for her share of the loss); Ambassador Ins. Co. v. Montes, 76 N.J. 477, 483, 486 n. 3, 388 A.2d 603 (1978) (stating in dictum that even if fire damage was intentionally caused by a dominant stockholder, the insurer would be liable to the insured corporation "provided that as a result the wrongdoer does not benefit"). See Annotation, Fire Insurance on Corporate Property as Affected by its Intentional Destruction by a Corporate Officer, Employee, or Stockholder, 37 A.L.R.3d 1385 (1971).