933 A.2d 26

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. KEVIN JOHNSON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 11, 2007—Decided October 11, 2007.

134

Before Judges SKILLMAN, WINKELSTEIN and YANNOTTI.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*Abby P. Schwartz,* Assistant Deputy Public Defender, of counsel and on the brief).

*Theodore F.L. Housel,* Atlantic County Prosecutor, attorney for respondent (*Peter J. Gallagher,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

As a threshold issue in this appeal, we examine the consequences of a sentencing court's failure to notify a defendant of his right to appeal within forty-five days.

On October 14, 2005, defendant pleaded guilty to a violation of probation (VOP) related to a fourth-degree hindering conviction under Indictment No. 04–01–0015, to which he initially pleaded guilty on March 1, 2004; the court imposed an eighteen-month prison term. The judge also vacated two suspended sentences for third-degree possession of controlled dangerous substance (CDS) convictions, under Indictment Nos. 04–05–0877 and 04–06–1296, and imposed concurrent four-year prison terms, consecutive to the VOP.

Defendant had pleaded guilty to the CDS charges on April 21, 2005, after his two suppression motions were denied by the court. The court imposed the suspended sentences at defendant's sentencing hearing on June 17, 2005. After imposing the sentences, the court did not advise defendant of his appeal rights.

On May 10, 2006, defendant filed his notice of appeal. Though his notice of appeal includes an appeal from his VOP, in his brief he limits his arguments to the denial of the two suppression motions. We therefore dismiss the appeal as to Indictment No. 04–01–0015. *See In re Freshwater Wetlands General Permit No. 16,*

379 *N.J.Super.* 331, 334 n. 1, 878 *A.*2d 22 (App.Div.2005) (appeal not briefed is dismissed).

On appeal, defendant raises the following issues, all regarding his suppression motions:

*POINT I*

BECAUSE BOTH STOPS AND SEIZURES WERE NOT SUPPORTED BY "REASONABLE AND ARTICULABLE" SUSPICIONS OF CRIMINAL ACTIVITY, NO LESS PROBABLE CAUSE, THE MOTIONS TO SUPPRESS EVIDENCE WERE ERRONEOUSLY DENIED. *U.S. CONST.* AMEND. IV, XIV; *N.J. CONST.* (1947) ART. 1, PAR. 7.

A. No Probable Cause Existed To Justify What, In Reality, Was An Arrest Of The Defendant In Either Indictment.

B. The Police Had Insufficient Facts To Conduct An Investigatory Stop In Indictment 04–05–0877.

C. The Police Had Insufficient Facts To Conduct An Investigatory Stop In Indictment 04–06–1296.

The State responds that defendant is procedurally barred from challenging the denial of his suppression motions because he did not timely appeal from his suspended sentences, which were imposed on June 17, 2005. Alternatively, the State argues that the suppression motions were correctly denied.

We conclude that the sentencing judge's failure on June 17, 2005, to advise defendant of his appeal rights extended defendant's time to file an appeal. Consequently, even though defendant did not file his appeal of the June 17, 2005 convictions until May 10, 2006, we consider the appeal as timely filed and address his arguments on their merits. In doing so, we affirm the denial of his suppression motion related to Indictment No. 04–05–0877, and we reverse the denial of the suppression motion under Indictment No. 04–06–1296. Accordingly, we vacate defendant's conviction under the latter indictment and remand for further proceedings.

I

On April 7, 2004 and May 11, 2004, defendant was arrested and charged with drug offenses. Based on the April 7 incident, Indictment No. 04–05–0877 charged him with third-degree possession of a CDS, *N.J.S.A.* 2C:35–10a(1). For the May 2004 incident,

Indictment No. 04–06–1296 charged him with third-degree possession of a CDS, *N.J.S.A.* 2C:35–10a(1) (count one); and third-degree possession of a CDS with the intent to distribute, *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(3) (count two). Defendant moved to suppress the CDS that led to both indictments. Both suppression hearings were held on April 21, 2005. The State presented the following evidence.

Officer Kevin Scanlon of the Atlantic City Police Department, who had been involved in at least fifty drug cases, testified that on April 7, 2004, he was assigned to a plain clothes unit that targeted drugs and prostitution in areas of Atlantic City. As a result of "a lot of complaints about drug activity in the area," at approximately 10:25 p.m. Scanlon and another police officer were conducting surveillance in the area of Georgia and Pacific Avenues. Scanlon observed a man, later identified as defendant, "lingering" in the area. He saw another man approach defendant from the door of a building, either an apartment building or a boarding house. Scanlon saw defendant hand the man currency and in return the man gave defendant a small package. Based on his training and experience, Scanlon concluded that he had just observed a drug transaction. The other officer radioed what Scanlon had observed and defendant's description.

After hearing the radio dispatch, Officers James Barrett and Robert Nawrocki stopped defendant. Barrett had observed a man, later identified as defendant, walking away from Georgia Avenue; the man fit the description given by the dispatch operator. Barrett and Nawrocki approached the man, asked him his name, and where he was coming from. Defendant's "speech appeared muffled, as if he was trying to conceal something in his mouth." That caused the officers to ask him to open his mouth and spit out what was in it; defendant initially refused to do so, but ultimately complied, "spit[ting] out a small Ziploc-style baggie containing a white powdery substance," which Barrett, based on his training and experience, believed to be cocaine. Barrett and Nawrocki testified that when they initially approached defendant,

they did not place him under arrest, and he could have walked away. They did not place him in custody until after they saw the bag of cocaine.

The court denied defendant's suppression motion. The judge found that the officers' testimony was credible and concluded that their action in stopping defendant and asking him to spit out what was in his mouth was constitutional. The judge reasoned:

> We have a high drug area with an experienced drug officer observing from, I believe he said, a casino garage with binoculars. So, what's he see? He sees at a rooming house this defendant approach the door to that place, someone came out and money is handed and a small package comes back. This conduct [is] very, very consistent with a hand-to-hand drug transaction.
>
> A description is radioed, that individual is stopped and what transpires is that the stopping officers, when they have a perfectly allowable citizen encounter with this defendant, find he is mumbling and conclude logically and reasonably that he's concealing something in his mouth, ask him to spit it out, ultimately he does and the CDS is found.
>
> What we have is perfectly appropriate and constitutional police conduct under these circumstances and the motion to suppress would be denied.

We turn next to the suppression hearing for the charges included in Indictment No. 04–06–1296. Atlantic City Police Officers Craig Mulhurn and George Adams testified for the State. On May 11, 2004, at approximately 7:45 p.m., Mulhurn received a call from dispatch. According to Mulhurn:

> A. It was in reference to three black males, one of which they gave a description of wearing a black sweatshirt with white pinstripes also in the company of the black female in the area of Spray Avenue selling drugs.
>
> Q. And so what did you do?
>
> A. I responded to the area looking for the suspects.
>
> Q. And did you see anyone?
>
> A. Yes, I did.
>
> Q. What did you see?
>
> A. At Florida and Pacific I saw the black male with the black sweatshirt and the white pinstripes along with a female getting into the back of a taxicab.

Mulhurn followed the taxicab in his patrol car and a block later stopped the taxicab. He approached the male passenger sitting in the taxicab, who was later identified as defendant, and said that the police were "investigating some males selling . . . in possession of drugs. Do you have anything on you that you shouldn't have?"

In response, defendant "dug into his pocket and produced a small yellow baggie with waxy substance in it." Mulhurn believed the substance was crack cocaine. When he asked defendant what was in the bag, defendant responded that it was "crack" and he was going to smoke it. After defendant gave him the drugs, Mulhurn placed defendant in custody. Mulhurn testified that if defendant had not produced the drugs, he would not have detained him.[1]

On cross-examination, Mulhurn acknowledged that he was told by dispatch that there were three males and a female involved in drug activity, but when he arrived at the scene, he saw only one male and a female. He also conceded that the complaint he had received "via dispatch" said that there were drugs "inside the woman's bag".

The court denied the suppression motion. The judge found that the officers' testimony was credible. He concluded that Mulhurn had a reasonable articulable suspicion to stop the taxicab based on the information he had received from dispatch.

After the court denied his suppression motions, defendant pleaded guilty to a single count of third-degree possession of a CDS under each indictment. On June 17, 2005, pursuant to the terms of the plea agreement, the court sentenced defendant on the two possession convictions, and resentenced him for the VOP related to the hindering conviction. For the possession convictions, the court imposed concurrent five-year suspended sentences, subject to a number of conditions, including in-patient drug treatment. For the VOP, the court continued probation for a

---

[1] After placing defendant in custody, the police searched the taxicab without securing a warrant. The search produced a clear plastic baggie of a white waxy substance that was determined to be a CDS, plus two smaller yellow bags, similar to the one that defendant had given to Mulhurn. No evidence was presented that the taxicab driver consented to the search. Nevertheless, while the record is unclear, it does not appear that the State relied on the CDS found during the search in its prosecution of defendant. The assistant prosecutor told the court that the State had moved to dismiss the possession with the intent to distribute charge, and was only pursuing the possession charge based on the CDS defendant had given to Mulhurn.

period of five years from the date of the original sentence, concurrent with the sentences imposed for the possession convictions.

At no time during the sentencing proceeding did the judge advise defendant of his appeal rights. *See R.* 3:21–4(h) (requiring sentencing court, following imposition of sentence, to advise defendant of right to appeal); *R.* 2:4–1(a) (appeals from final judgments of courts shall be taken within forty-five days of their entry). Defendant did not file an appeal from his sentences within forty-five days from the date his judgments of conviction were entered on June 17, 2005.

Defendant did not comply with the conditions of his sentences. Accordingly, on October 14, 2005, the court revoked the suspended sentences on the two possession convictions and imposed concurrent four-year prison terms (Indictment Nos. 04–05–0877 and 04–06–1296).

Defendant filed his initial notice of appeal on May 10, 2006, in which he appealed "from the final judgment of conviction of violation of probation entered on October 14, 2005." That notice of appeal was accompanied by defendant's certification that he advised the Office of the Public Defender "on or about October 17, 2005," of his request to appeal his sentence and convictions. *See State v. Altman,* 181 *N.J.Super.* 539, 541, 438 *A.*2d 576 (App.Div. 1981) (forty-five day rule relaxed when defendant " 'personally, within time, requested his trial counsel or the Public Defender's Office to file appeal on his behalf' ") (quoting "NOTICE TO APPELLATE BAR," 100 *N.J.L.J.* 1208 (1977)). Defendant filed an amended notice of appeal dated January 17, 2007, which is not date-stamped as to when it was received by the court. Defendant appealed "from the denial of [his] motions to suppress entered on October 14, 2005."

## II

■ Against this factual and procedural background, we first address the procedural issue: whether defendant's appeal of the denial of his suppression motions was filed as within time.

■ A defendant has forty-five days to appeal from a judgment of conviction. *R.* 2:4–1(a).[2] A judgment of conviction is generated when a judge signs a sentencing order and it is entered by the clerk. *Sassano v. BLT Discovery, Inc.,* 245 *N.J.Super.* 539, 546, 586 *A.*2d 307 (App.Div.1991); *State v. Womack,* 206 *N.J.Super.* 564, 570, 503 *A.*2d 352 (App.Div.1985), *certif. denied,* 103 *N.J.* 482, 511 *A.*2d 658 (1986). The judgment provides "finality." *Womack, ibid.*

■ Imprisonment, probationary sentences, and suspended sentences are all recognized dispositions under New Jersey law. *N.J.S.A.* 2C:43–2. Suspended and probationary sentences may be subject to conditions. *N.J.S.A.* 2C:45–1. Like a judgment of conviction arising out of a sentence of incarceration, a judgment of conviction reflecting a suspended sentence is a final judgment that triggers the time limits governing a criminal defendant's right to appeal. *State v. Mitchell,* 374 *N.J.Super.* 172, 175, 863 *A.*2d 1092 (App.Div.2005) ("that the judge . . . elected to suspend imposition of sentence did not make the . . . Judgment of Conviction any less final and defendant's right to appeal from that conviction was unaffected by the suspension of the sentence"). *Ibid.*

Applying the same reasoning here, defendant's June 17, 2005, judgments of conviction for the possession offenses were final. The imposition of suspended sentences rather than incarceration did not excuse him from filing an appeal within forty-five days of their entry. Yet, it was not until after the suspended sentences were vacated and the judge imposed prison terms on October 14, 2005, that defendant filed his notice of appeal. In light of the lengthy delay, the State claims that defendant is procedurally barred from challenging the denial of his suppression motions that led to his guilty pleas. Had the sentencing judge advised defendant of his appeal rights when he imposed the sentence on June 17, 2005, we would agree with the State. *See R.* 3:21–4(h) (after

---

[2] *Rule* 2:4–4(a) permits a thirty-day extension under certain circumstances, which are not implicated here.

imposing sentence, court shall advise defendant of his right to appeal). But, because the judge did not so advise defendant, we conclude that his notice of appeal was filed as within time.

The State claims that the court's failure to notify defendant did not excuse his late filing because he did not request an attorney, within the forty-five day period, to file such a notice on his behalf. The State relies on our opinion in *Altman, supra,* where we stated that "the sole determinant on a motion by an indigent criminal defendant for leave to file a notice of appeal *nunc pro tunc* is whether that defendant asked either private counsel or a Public Defender, within time, to file such a notice for him." 181 *N.J.Super.* at 541, 438 *A.*2d 576.

The State also asserts that the New Jersey Supreme Court's opinion in *State v. Molina,* 187 *N.J.* 531, 902 *A.*2d 200 (2006), supports the State's position. In *Molina,* the Court held that a defendant who has not been advised of his right to appeal has five years from the date of his sentencing to file an application for leave to appeal as within time; but, the Court made its holding prospective. *Id.* at 536, 543, 902 *A.*2d 200. In other words, the State asserts that prior to *Molina, Altman* was controlling, and unless a defendant—even a defendant who was not told by the court that he had forty-five days to appeal—requested his attorney within the forty-five day period to file an appeal, the defendant was precluded from filing a late notice of appeal. We disagree with the State's construction of these cases.

*Altman, supra,* decided in 1981, is silent as to whether the defendant was told by the sentencing judge that he had forty-five days to appeal. 181 *N.J.Super.* at 539, 438 *A.*2d 576. The opinion did not discuss how that failure would affect a defendant's entitlement to file an appeal out of time. We therefore consider *Altman* to be inapplicable to a situation where a defendant is not informed by the sentencing court of his right to appeal in accordance with *Rule* 3:21–4(h).

Prior to *Altman,* in 1980, we issued *State v. Fletcher,* 174 *N.J.Super.* 609, 417 *A.*2d 106 (App.Div.1980), *certif. denied,* 89

*N.J.* 444, 446 *A.*2d 165 (1982), in which we did address the consequences of a sentencing judge's failure to notify a defendant of his appeal rights. We stated that "the mandatory time limit for taking an appeal does not begin to run until a defendant is advised by the trial judge of his rights in accordance with *Rule* 3:21–4(f)," now *Rule* 3:21–4(h). *Id.* at 614, 417 *A.*2d 106. As we explained, unless a defendant is notified of his appeal rights by the court, the defendant may not be fully aware of the time constraints on those rights. *Id.* at 615, 417 *A.*2d 106. We reasoned that when the sentencing judge fails to notify a defendant of his appeal rights, "the mandatory time limit for taking an appeal does not begin to run." *Id.* at 614, 417 *A.*2d 106.

We do not read *Molina* as altering our decision in *Fletcher*, except to place a five-year limit on what was essentially an open ended right of a defendant to file an appeal as within time if the defendant was not advised by the sentencing judge of his appeal rights. *See* Pressler, *Current N.J. Court Rules*, comment 8 on *R.* 3:21–4(h) (2008) (noting that the Court in *Molina* "placed a limit of five years from the date of sentencing on the right of an unadvised defendant to appeal").

Applying these principles here, because the sentencing court on June 17, 2005, failed to advise defendant of his right to appeal after imposing the suspended sentences, defendant is not procedurally barred from challenging the court's denial of his suppression motions. We therefore turn next to a substantive review of defendant's suppression motions.

### III

[At the court's direction, section III of the opinion, which includes a substantive review of defendant's suppression motions, has been omitted from the published version of this opinion.]

### IV

In sum, we affirm the order denying defendant's suppression motion under Indictment No. 04–05–0877. We reverse the order

denying defendant's suppression motion under Indictment No. 04–06–1296, and suppress the CDS found on defendant's person and in the taxicab on May 11, 2004.  We vacate defendant's guilty plea on the latter indictment and remand for additional proceedings consistent with this opinion.  We dismiss the appeal as to Indictment No. 04–01–0015.