598 A.2d 918

PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPA-
NY, PLAINTIFF–RESPONDENT, v. JAMES KARLINSKI, JR.,
JAMES KARLINSKI, SR., EILEEN KARLINSKI, DEFEN-
DANTS, AND MARK ANTHONY MASCITELLI, JR. AND BREN-
DA MASCITELLI, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 2, 1991—Decided November 1, 1991.

458

Before Judges GAULKIN, BRODY and LANDAU.

*Courtland T. Babcock, II* argued the cause for appellants (*Babcock, Hennes & Bielory,* attorneys; *Courtland T. Babcock,* of counsel; *Margarie M. Herlihy* on the brief).

*Randi S. Greenberg* argued the cause for respondent (*Robert A. Auerbach,* attorney; *Randi S. Greenberg,* of counsel, and on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Defendants Mark Anthony Mascitelli (Mark), a minor, and his mother Brenda Mascitelli, individually and as guardian *ad litem,* appeal from the award of summary judgment favorable to plaintiff Prudential Property and Casualty Insurance Company (PRUPAC) in a declaratory judgment action. The Mascitellis' cross-motion for summary judgment was denied, but this has not been appealed. PRUPAC sought in the action a determination that its homeowners policy issued to defendants James and Eileen Karlinski did not require it to defend or indemnify them and their minor son, James, Jr. (a named insured), against injuries sustained by Mark during an assertedly pre-arranged voluntary physical confrontation between 14–year old Mark and 13–year old James, Jr.[1] PRUPAC's homeowners policy issued

---

[1] Surprisingly, the Karlinskis have not themselves participated and appealed in this matter, nor have they independently answered in the tort action, according to the briefs. The Mascitellis might ultimately have had their own litigable interest in the coverage issue, *see In re Estate of Gardinier,* 40 *N.J.* 261, 265, 191 *A.2d* 294 (1963), but any standing issue is mooted by PRUPAC's election to join them in the declaratory action.

to the Karlinskis excluded from its personal liability and third-party medical payments coverage "bodily injury ... which is expected or intended by the insured."

The appeal requires that we again explore the frequently visited but still unclearly charted area of liability coverage for intentional torts which produce unintended results. In doing so, we conclude that the PRUPAC summary judgment motion should have been denied because the material factual issue of intent was not resolvable on the motion.

Pending at the time of the summary declaratory judgment award was a personal injury action brought by the Mascitellis against the Karlinskis. The Mascitellis' complaint included counts for negligent and reckless conduct, but did not specifically allege intentional infliction of the broken hip suffered by Mark. The complaint also alleged that the Karlinskis negligently supervised James, Jr. Judgment for compensatory and punitive damages was sought. Summary judgment was granted to PRUPAC excusing it from a duty to defend and indemnify as to "all claims" in the Mascitelli complaint.

The motion judge concluded from the depositions and interrogatory answers that "Karlinski instigated the fight and threw the first blow and started the fight. As far as I am concerned, it is intentional conduct and the coverage doesn't apply." He also concluded that a broken "leg" was not an extraordinary consequence of the fight. In fact, it was Mark's hip which was broken, necessitating extensive surgical and rehabilitative treatment. The motion judge did not refer to or consider the possible effect in a declaratory action of the absence of an assertion in the underlying complaint that James, Jr. intended to cause Mark's injury.

On appeal, the Mascitellis urge that factual issues precluded the determination on summary judgment that James, Jr. intended or expected to cause the bodily injury which Mark sustained. PRUPAC argues, in effect, that regardless of the absence of intentional tort allegations in the complaint, James, Jr.'s acts

were such that Mark's hip fracture was properly deemed to have been "expected or intended" under the policy exclusion as a matter of law, regardless of who caused the confrontation.

■■ We note first that the above-quoted policy exclusion of coverage for bodily injury which is expected or intended by the insured is valid and enforceable, *Allstate Ins. Co. v. Malec,* 104 *N.J.* 1, 514 *A.*2d 832 (1986), and that coverage may be determined in a separate declaratory action in advance of the tort proceeding, *Burd v. Sussex Mutual Ins. Co.,* 56 *N.J.* 383, 267 *A.*2d 7 (1970), where the result of the negligence case will not be determinative of the insurer's responsibility. *See Ohio Casualty Ins. Co. v. Flanagin,* 44 *N.J.* 504, 512, 210 *A.*2d 221 (1965). However, in cases involving an intentional act but not an intention to cause the harm which occurred, it is "difficult even to ascertain whether there is a clear weight of authority with respect to when liability coverage applies...." R. Keeton & A. Widiss, *Insurance Law,* § 5.2, at 524 (1988).

■ One treatise suggests, "[I]f the resulting damages can be viewed as unintended by a fact finder the result constituted an 'accident' for purposes of the liability insurance policy; it is the quality of result rather than the quality of the cause that is controlling." 7A J. Appleman, *Insurance Law and Practice,* § 4492.02, at 31 (Berdal. ed. 1979). Citing *Hanover Ins. Co. v. Cameron,* 122 *N.J.Super.* 51, 298 *A.*2d 715 (Ch.Div.1973), Appleman states:

> The word "intent" for purposes of tort law and for purposes of exclusionary clauses in insurance policies denotes that the actor desires to cause the consequences of his act or believes that consequences are substantially certain to result from it. In order for an act to be intentional, its consequences must be substantially certain to result as opposed to the feature of wanton acts that the consequences be only probably certain to result; thus, a normal actor's conduct loses the character of intent and becomes mere recklessness.

*Id.* at 29.

*Hanover* has never been overruled, and has been frequently cited with favor in New Jersey and elsewhere, although its utilization of the *Restatement (Second) of Torts* § 8A (1965)

definition of "intent" (the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it), has been roundly criticized by the two concurring justices in *Ambassador Ins. Co. v. Montes,* 76 *N.J.* 477, 488, 388 *A.*2d 603 (1978) (Pashman, J., concurring). The concurring opinion urges adoption of the *Lyons v. Hartford Ins. Group* [2] standard of intent, *i.e.,* whether the injury was the intended consequence of an intentional act, as distinct from being the unintended consequence of such intentional act. Drawing a distinction between intentional and wanton acts, the *Hanover* court adopted the *Restatement* view that "[a]s the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness.... As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence.... " *Restatement (Second) of Torts* § 8A comment b (1965).

Notwithstanding frequent recognition of the *Lyons* and *Hanover* intent-of-the-insured approach in New Jersey opinions, however, there has also been recognition of the approach set forth in *Oakes v. State Farm Fire & Casualty Co.,* 137 *N.J.Super.* 365, 368, 349 *A.*2d 102 (App.Div.1975). There we held, in effect, that if the insured intended any injury, the exclusion should apply even if the actual harm far exceeded the consequences which might reasonably be expected by the insured. When applied to an injured third-party who, as here, is seeking to preserve rights against the carrier, the *Oakes* approach diminishes that injured party's realistic possibility of recovery more than it impacts upon the insured tortfeasor. *Compare, Ambassador Ins. Co. v. Montes, supra,* 76 *N.J.* at 484, 388 *A.*2d 603. (Insurer's discharge of contractual obli-

---

[2] 125 *N.J.Super.* 239, 247, 310 *A.*2d 485 (App.Div.1973), *certif. denied,* 64 *N.J.* 322, 315 *A.*2d 411 (1974).

gation by payment to innocent injured third person furthers public interest.)

In *Allstate Ins. Co. v. Schmitt,* 238 *N.J.Super.* 619, 570 *A.*2d 488 (App.Div.), *certif. denied,* 122 *N.J.* 395, 585 *A.*2d 394 (1990), we reviewed the scope of *Ambassador, Lyons, Oakes* and *Allstate v. Malec, supra,* as applied to an express policy exclusion for *criminally* reckless conduct, and concluded that, in face of a criminal conviction, such an exclusion was valid. *See Allstate v. Schmitt, supra,* at 628–630, 570 *A.*2d 488. We recognized the distinction between a policy exclusion expressed in terms of criminal conduct, and, as in *Lyons,* one expressed in terms of an injury expected or intended. *Id.* 238 *N.J.Super.* at 631, 570 *A.*2d 488. In *Allstate v. Malec, supra,* the Supreme Court considered the deliberate ramming of a police car, and upheld an intentional wrongful acts exclusion in an automobile liability policy against a contention that the No–Fault Act mandated liability coverage for intentional acts. The Court expressly recognized the lack of a unanimous view even as to the correctness of the severely divided *Ambassador* opinion, *Allstate v. Malec, supra,* 104 *N.J.* at 12, 514 *A.*2d 832, but made clear that New Jersey law supports enforcement of the automobile liability policy exclusion for intentional wrongful acts.

In *Tal v. Franklin Mut. Ins. Co.,* 172 *N.J.Super.* 112, 410 *A.*2d 1194 (App.Div.1980), we cited favorably both the *Lyons* and *Oakes* views in holding that where an intentional act causes intended injury, the exclusion applies. That same year, in an opinion which rested heavily on *Ambassador, Burd* and *Lyons,* we focused on the necessity to afford an opportunity to explore the intentional nature of harmful conduct, even where the insured actually shot the injured party. *See Garden State Fire & Casualty Co. v. Keefe,* 172 *N.J.Super.* 53, 410 *A.*2d 718 (App.Div.1980).

Recently we again considered issues of coverage for unintended results of intentional acts, and concluded that in appropriate factual settings, such coverage is not necessarily exclud-

ed. *See SL Industries v. American Motorists Ins. Co.,* 248
*N.J.Super.* 458, 591 *A.*2d 677 (App.Div.), *certif. granted,* 126
*N.J.* 385, 387, 599 *A.*2d 162, 163 (1991); *Atlantic Employers
Ins. Co. v. Tots & Toddlers Pre-School Day Care Center, Inc.,*
239 *N.J.Super.* 276, 281, 571 *A.*2d 300 (App.Div.), *certif. denied,*
122 *N.J.* 147, 584 *A.*2d 218 (1990). Nonetheless, in *Atlantic
Employers* we held an inference of intentional injury to be
applicable in cases of child sexual molestation.

Our review of New Jersey authorities satisfies us that, just
as observed by Keeton and Widiss, it is difficult to ascertain a
clear weight of authority on the subject of liability insurance
coverage for unintended results of intentional acts. Differing
combinations of variables, such as the language of the exclu-
sion clause, the nature of the harm and its relationship to the
intentional act, and the availability of relief to the injured party,
appear to influence the extent to which our decisions have
inquired. into the nature of the intent. Not surprisingly, an
annotation on "Insurance–Intended or Expected Injury," Anno-
tation, *Construction and Application of Provision of Liabili-
ty Insurance Policy Expressly Excluding Injuries Intended
or Expected by Insured,* 31 *A.L.R.*4th 957, 975 (1981), seems to
suggest a unanimity of view in New Jersey cases at one point,
while citing one or more of the same cases for varying views in
other sections of the annotation. The wide range of decisions
reviewed in that annotation tends to confirm the Keeton–Widiss
evaluation.

Distilling the cited authorities, we hold that, when a coverage
exclusion is expressed in terms of bodily injury expected or
intended by the insured, and where the intentional act does not
have an inherent probability of causing the degree of injury
actually inflicted, a factual inquiry into actual intent of the
actor to cause that injury is necessary.

■ We have reviewed the moving and responding papers,
and the depositions and interrogatory responses. Accepting as
true the testimony and responses of James, Jr., as required in a

motion for summary judgment, *R.* 4:46–2, a version emerges both as to the facts and James, Jr.'s purpose which is different from that set forth by the motion judge. If believed, this would present Mark as a persistent tormentor and bully to James, Jr., and as instigator of the scheduled confrontation both in advance of, and at, its inception. On this version, the 13–year old defendant was unwillingly compelled by the code and peer pressure of the teenage society in which he functioned to accept Mark's provocatory challenge or be branded a "wuss" (James Jr.'s deposition), risking societal rejection. James, Jr. disclaimed an intention to cause injury beyond transient discomfort of a minor physical encounter.

Acceptance of this version of the facts may offer some explanation for the omission of intentional tort language in the underlying complaint. It also presents a factual dispute on the issue whether Mark's broken hip was expected or intended by James, Jr., based upon our interpretation of the New Jersey cases and the policy language.[3] Inasmuch as the trial judge undertook to resolve this factual dispute on the motion, ignoring James, Jr.'s version of the facts, the grant of summary judgment must be reversed.

In so ruling here, we endorse the Appleman suggestion that, "The 'transaction as a whole' test, rather than analyzing the constituent acts which make up the transaction, should be applied by a fact finder when determining whether the term

---

[3]Memories of earlier days prompt us to venture the probability that young teenagers today, no less than their forebears, are prone to engage in mutually accepted tests of dominance and prowess, involving physical contact. These may take the form of one-on-one basketball or hockey match-ups, or king-of-the-hill assaults, or wrestling, or other forms of stressful encounter in which, physicality notwithstanding, there is no intent to cause more than passing discomfort. When such encounters produce injury, the trier of fact, rather than a summary judgment motion judge, is in the better position to make the evaluation. Insurance carriers may minimize litigation of such issues by amplification of the exclusionary clause beyond the "intended or expected" verbiage.

'accident,' as used within the liability policy under which a recovery is sought, is applicable to a given situation." 7A J. Appleman, *supra*, § 4492.02, at 31. Moreover, a motion for summary judgment should not ordinarily be granted where an action or defense requires determination of a state of mind, particularly in the absence of clear precedent determinative of the precise question presented. *See, e.g., Jones v. Jones*, 242 *N.J.Super.* 195, 206–209, 576 *A.*2d 316 (App.Div.), *certif. denied*, 122 *N.J.* 418, 585 *A.*2d 412 (1990).[4]

■ Finally, we observe that even if summary judgment for PRUPAC were warranted as to defense and indemnification for James, Jr., no version of facts asserted would provide a basis for any claim against defendants James Karlinski, Sr. and Eileen Karlinski other than for negligent supervision of James, Jr. It was plainly erroneous to deprive the tort plaintiffs of the benefits of coverage which should have been afforded to the Karlinskis as to this theory of liability.

Reversed and remanded for trial.

---

[4] We are not unaware that the coverage exclusion issues here considered are being raised in an appeal by a party whose status as an "innocent injured third person" (*see Ambassador, supra*, 76 *N.J.* at 484, 388 *A.*2d 603; *Burd, supra*, 56 *N.J.* at 398, 267 *A.*2d 7) could be affected by the result in the underlying tort litigation, as could the issue of James, Jr.'s intent. Notwithstanding the theoretical possibility of collusion between the injured and the insured party to formulate a non-excluded claim, this may well be a case in which the coverage determination should await outcome of the underlying tort action. *See, e.g., Burd, supra*, 56 *N.J.* at 391, 267 *A.*2d 7; *CPS Chemical Co. v. Continental Ins. Co.*, 203 *N.J.Super.* 15, 21, n. 2, 495 *A.*2d 886 (App.Div.1985).