**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2522-22

STATE FARM FIRE AND
CASUALTY COMPANY,

     Plaintiff-Respondent,

v.

DR. ROBERT HOLE, M.D.,

     Defendant-Appellant,

and

DR. MICHAEL RUSSONELLA,
D.O., and NORTH JERSEY
ORTHOPAEDIC AND SPORTS
MEDICINE INSTITUTE, LLC,

     Defendants.

_____

Argued January 15, 2025 – Decided March 21, 2025

Before Judges Currier, Marczyk, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3885-20.

Gary F. Werner argued the cause for appellant (Schenck, Price, Smith & King, LLP, attorneys; Khaled J. Klele, Corey L. LaBrutto and Samantha T. Bacarro, on the briefs).

Robert T. Pindulic argued the cause for respondent (White and Williams LLP, attorneys; Robert T. Pindulic and Marc L. Penchansky, on the brief).

PER CURIAM

Defendant Robert Hole, M.D., appeals from the March 3, 2023 order granting plaintiff State Farm Fire and Casualty Company's motion for summary judgment denying Dr. Hole coverage under the policy issued by State Farm. Following our review of the record and the applicable legal principles, we affirm.

## I.

This case stems from an underlying lawsuit filed against Dr. Hole by Michael Russonella, D.O.[1] Dr. Russonella alleged Dr. Hole made false statements regarding Dr. Russonella's alleged misconduct at St. Mary's Hospital in Passaic. As a result, Dr. Hole sought coverage from his insurer, State Farm, to defend the action. The central question in this matter is whether State Farm

---

[1] Dr. Russonella was a plaintiff in the underlying action, and a defendant in this coverage action.

A-2522-22

was required to defend the action and indemnify Dr. Hole once the tortious interference count was the only remaining claim.

In July 2017, Dr. Russonella filed a complaint against Dr. Hole, which initially alleged only defamation. Dr. Russonella claimed Dr. Hole fabricated allegations against him and attacked his character and standing in the medical community, injuring him economically.[2] Both physicians were orthopedic surgeons with privileges at St. Mary's Hospital.

In July 2017, State Farm advised Dr. Hole it would be "handling" the matter filed by Dr. Russonella. Later that month, State Farm appointed counsel to defend Dr. Hole.[3] The letter also informed Dr. Hole that State Farm was reserving its rights to "deny defense or indemnity" for several reasons, including:

> If the definition of "personal and advertising injury" caused by an offense has been met, it is questionable whether the "personal and advertising injury" was caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

---

[2] Dr. Hole maintains he reasonably believed Dr. Russonella's conduct endangered the safety of patients and therefore reported his concerns to St. Mary's.

[3] Dr. Hole does not recall receiving this letter.

3

If the definition of "personal and advertising injury" caused by an offense has been met, it is questionable whether the "personal and advertising injury" arose out of oral or written publication of material, done by or at the direction of the insured with knowledge of its falsity.

It is questionable whether other insurance applies to this matter.

Punitive damages are pled in the [c]omplaint. Punitive damages are presently uninsurable in the State of New Jersey as a matter of public policy.

Because of the potential for an excess verdict and the punitive damages alleged, the letter also advised Dr. Hole of his right to obtain personal counsel and that State Farm's "defense of this action by the attorney on your behalf is not to be considered a waiver of such policy defense or of any policy defenses which may be involved in this suit."

Dr. Hole's policy contained certain exclusions. One such exclusion was for "[p]ersonal [a]nd [a]dvertising [i]njury":

(a)    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(b)    Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

4

In September 2017, the trial court dismissed Dr. Russonella's defamation complaint as untimely under the statute of limitations. The order stated the defamation and false light claims could not be included in the amended pleading. Dr. Russonella subsequently filed an amended complaint alleging tortious interference with business.[4] He alleged Dr. Hole fabricated allegations, made misrepresentations, and intentionally interfered with his business relationships at St. Mary's. He further asserted Dr. Hole made the statements "maliciously intending to injure" Dr. Russonella and to "totally ruin" his profession. In September 2017, State Farm subsequently sent Dr. Hole a letter confirming receipt of Dr. Russonella's amended complaint in the underlying action and informing him that the earlier reservation of rights letter remains applicable.[5]

In June 2020, State Farm filed a complaint seeking declaratory relief claiming it had no duty to defend or indemnify Dr. Hole regarding the claims asserted by Dr. Russonella. It asserted Dr. Russonella alleged Dr. Hole "intentionally" interfered with his business relationships. State Farm further asserted that in allegedly making "untrue" and "malicious[]" statements

---

[4] Dr. Russonella again asserted claims for libel, slander, and false light. However, the parties agreed that Dr. Russonella was only pursuing the tortious interference claim.

[5] State Farm produced a signed returned certified mail receipt for this letter.

A-2522-22

"targeted to injure Dr. . . . Russonella" that Dr. Hole knew were "untrue," "the policy exclusion for personal and advertising injury arising out of oral or written publication of material . . . with knowledge of its falsity precludes coverage." In response, Dr. Hole filed a counterclaim seeking damages for breach of contract, breach of good faith and fair dealing, and bad faith. Thereafter the parties engaged in discovery.

State Farm subsequently moved for summary judgment, which the trial court granted. The court explained, "[t]he issue here is really whether that particular clause under the [b]usiness liability [c]overage . . . [e]xclusion . . . applies here." The court noted the clause is not "ambiguous in any way." Further, it found it was not "against public policy in any way and, in fact, looking at the allegations . . . the exclusion in this particular case applies and [it is appropriate] to grant . . . [State Farm]'s motion for summary judgment." The court explained,

> [y]ou take the complaint – the allegations in the complaint and you take the policy and you look at each . . . and see whether it falls within it and . . . in this particular case the allegations made here do fall within the exclusion and that being the case, [it is appropriate] to grant the motion for summary judgment.

A-2522-22

This appeal ensued.[6]

## II.

Dr. Hole argues the policy does not exclude tortious interference claims, and the trial court erred by entering summary judgment based on mere allegations in the underlying complaint. He asserts the exclusion was ambiguous and violated public policy. He further contends a material issue of fact exists regarding his subjective intent. He also argues the court erred in dismissing his counterclaims. Dr. Hole additionally asserts the trial court erred in addressing his detrimental reliance arguments and failed to provide a clear statement of reasons for granting State Farm's motion.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The trial court's "function is not . . . to weigh the evidence and determine the truth . . . but to determine whether there is a genuine issue for trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting

---

[6] Dr. Hole's counsel advised at oral argument that Dr. Russonella dismissed the tortious interference claim against Dr. Hole with prejudice in July 2023.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The trial judge must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party . . . are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 523. When the facts present "a single, unavoidable resolution" and the evidence "is so one-sided that one party must prevail as a matter of law," then a trial court should grant summary judgment. Id. at 540 (quoting Liberty Lobby, Inc., 447 U.S. at 252).

### A.

Dr. Hole argues a tortious interference claim "does not require an intention to cause the injury alleged." Rather, he asserts "the intent required in tortious interference claims is an intent to interfere." He relies on SL Industries v. American Motorists Insurance Co. for the proposition that a court reviewing whether a claim comes within the scope of an insurance policy must focus on the "insured's intent to cause the injury rather than on its intent to commit the act that resulted in the injury." 128 N.J. 188, 207 (1992). He maintains that for the exclusions in this policy to apply, he must have intended to cause the injury. He further asserts the court erred by relying on mere allegations in the

8

complaint, and it should have made findings regarding his subjective intent under SL.

"The interpretation of an insurance policy, like any contract, is a question of law, which we review de novo." Sosa v. Mass. Bay Ins. Co., 458 N.J. Super. 639, 646 (App. Div. 2019) (citing Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J. 597, 605 (2012)). The duty to defend derives from the language of the policy. Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins., 98 N.J. 18, 22 (1984). Whether a duty to defend exists is dependent upon "[t]he interpretation of [the] insurance policy upon established facts[,] [which] is a question of law for the court to determine." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 453 (App. Div. 2018). "In considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary meaning.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). "If the terms are not clear, but instead are ambiguous, they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Ibid.

Disputes about an insurer's duty to defend are "generally determined by a side-by-side comparison of the policy and the complaint, and [the duty] is

triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment." Wear, 455 N.J. Super. at 453 (citing Sears Roebuck & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 340 N.J. Super. 223, 241-42 (App. Div. 2001)). "In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." Ibid. (quoting Flomerfelt, 202 N.J. at 444).

"The duty to defend is not abrogated by the fact that the claim may have no merit and cannot be maintained against the insured, either in law or in fact, because the cause of action is groundless, false, or fraudulent." Sears Roebuck & Co., 340 N.J. Super. at 241-42. "If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." Voorhees, 128 N.J. at 173-74 (citing Cent. Nat'l Ins. v. Utica Nat'l Ins., 232 N.J. Super. 467, 470 (App. Div. 1989)). The analysis of the allegations is not limited to the complaint itself, but rather "facts outside the complaint may trigger the duty to defend." SL, 128 N.J. at 198.

"We are guided by general principles: 'coverage provisions are to be read broadly, exclusions are to be read narrowly, potential ambiguities must be resolved in favor of the insured, and the policy is to be read in a manner that

fulfills the insured's reasonable expectations.'" Sosa, 458 N.J. Super. at 646 (quoting Selective Ins. Co., 210 N.J. at 605). By contrast, "[i]f the plain language of the policy is unambiguous, we will 'not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased.'" Motil v. Wausau Underwriters Ins. Co., 478 N.J. Super. 328, 336 (App. Div. 2024) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016)) (internal quotation marks omitted).

We are unpersuaded by Dr. Hole's arguments that a tortious interference claim does not require an intent to cause the injury alleged. In Printing Mart-Morristown v. Sharp Electronics Corp., our Supreme Court noted:

> A complaint based on tortious interference must allege facts that show some protectable right – a prospective economic or contractual relationship. . . . A complaint must demonstrate that a plaintiff was in "pursuit" of business. Second, the complaint must allege facts claiming that the interference was done intentionally and with "malice." Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 588 (E. & A. 1934) . . . . For purposes of this tort, "[t]he term malice is not used in the literal sense requiring ill will toward the plaintiff." Restatement (Second) of Torts ch. 37, intro. note (1979). Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse.

[116 N.J. 739, 751 (1989) (second alteration in original) (emphasis added) (citations omitted and reformatted).][7]

Here, State Farm's relevant policy provisions state that coverage for "[p]ersonal [a]nd [a]dvertising [i]njury" is subject to certain exclusions, including those: "a. [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" or "b. [a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

Pursuant to the plain language of these policy exclusions, a tortious interference cause of action is an excluded claim because not only does the tort require intentional interference, but it further requires malice or an intent "that the harm was inflicted intentionally." Ibid. That is, the tortious interference claim intrinsically includes an intent to harm. The Russonella complaint implicates the exclusion in section a., because it alleges Dr. Hole's "fabricated" allegations caused Dr. Russonella's damages "with knowledge" his acts would do so. Moreover, under section b., Dr. Russonella's complaint alleges Dr. Hole's

_____

[7] The Court further explained "the complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain. . . . [And], the complaint must allege that the injury caused damage." Ibid.

alleged deliberate fabrications were made with "knowledge of [their] falsity" thereby implicating that provision. A tortious interference cause of action, by its express terms, requires plaintiff to demonstrate the interference was done intentionally and with malice, or that the harm was intentionally inflicted. Thus, the trial court did not err in concluding Dr. Hole was not entitled to coverage under the State Farm policy.

Plaintiff's reliance on SL is misplaced. SL was an insurance coverage action. 128 N.J. at 193. In that underlying case, the plaintiff was one of SL Industries' former vice-presidents who was told by the defendant's CEO "that the company intended to eliminate his position," and the plaintiff, therefore, agreed to retire early. Ibid. The defendant subsequently hired a new executive, and the plaintiff "alleged that that new executive was his replacement, and . . . the assertion that his position was to be eliminated was simply a pretext to force his early retirement." Id. at 194.

The plaintiff asserted claims against SL Industries stemming from his discharge, including age discrimination and common law fraud. Ibid. Thereafter, SL Industries sought coverage from its carrier in defending against the wrongful termination claims. Id. at 195. SL did not involve an analysis of a policy exclusion like the matter before us. Rather, the Court there addressed

13

whether the injuries claimed by the plaintiff in the underlying action allegedly caused by SL Industries "constitute[d] an 'occurrence'" under the policy. Id. at 193. The carrier initially declined coverage, asserting that its bodily- and personal-injury policies did not cover liability for the allegations in the underlying complaint. Id. at 195. During the course of discovery, the plaintiff alleged an emotional distress claim, which included humiliation. Ibid. SL Industries again requested coverage, which was denied. Ibid. SL Industries subsequently settled the underlying suit and brought a coverage action against its insurance carrier. Ibid.

The SL Court noted, "the duty to defend is generally determined by comparing the allegations in the complaint with the language of the policy." Id. at 197. "When the two correspond, the insurer must defend the suit." Ibid. The Court observed there was nothing about the common law fraud claim in the underlying complaint that would have "alerted the insurance company that the fraud had led to bodily or personal injuries potentially covered under the policies." Id. at 198. Because the complaint did not allege any injuries that would have triggered the insurer's duty to defend, the decision not to defend initially was appropriate. Ibid.

However, the Court determined that facts outside of the complaint can trigger a duty to defend. Ibid. The Court proceeded to note the plaintiff in the underlying action, who alleged an injury arising out of humiliation, implicated one of the provisions of the insurer's policy. Id. at 206. The Court further noted, "[w]e agree with the Appellate Division's emphasis on the insured's intent to cause the injury rather than on its intent to commit the act that resulted in the injury." Id. at 207. The Court stated "the intent element in fraud, consisting of the intent to induce reliance, constitutes a subjective intent to injure." Id. at 209. However, that did not end the Court's inquiry. The Court then addressed whether there was a specific intent to cause the emotional distress injury. Ibid. In doing so, it adopted the test set forth in Prudential Property & Casualty Insurance Co. v. Karlinski, 251 N.J. Super. 457 (App. Div. 1991).

The SL Court noted that in Karlinski, this court held "where the intentional act does not have an inherent probability of causing the degree of injury actually inflicted, a factual inquiry into actual intent of the actor to cause that injury is necessary." 251 N.J. Super. at 464 (emphasis omitted). The SL Court added,

> [i]n other words, the [Karlinski] court held that under normal circumstances, when the result of an action conforms to that which one would predict, the demonstration of a subjective intent to injure is sufficient to preclude coverage without further inquiry into the intent to cause the actual injury that resulted.

15

However, in those circumstances in which the facts indicate that the acts in which the insured engaged were unlikely to result in the degree or type of injury that in fact occurred, an inquiry into the subjective intent to cause the resulting injury is in order.

[128 N.J. at 210.]

The Court commented,

[a]ssuming the wrongdoer subjectively intends or expects to cause some sort of injury, that intent will generally preclude coverage. If there is evidence that the extent of the injuries was improbable, however, then the court must inquire as to whether the insured subjectively intended or expected to cause that injury. Lacking that intent, the injury was "accidental" and coverage will be provided.

[Id. at 212.]

Here, because Dr. Russonella alleges the types of injuries inherently likely from the alleged tortious interference, we need not inquire further into Dr. Hole's subjective intent. Dr. Russonella asserted a tortious interference claim and that he was "caused to suffer economic damages" and injuries to his reputation because of Dr. Hole's fabricated allegations about his medical competency and ethics. These purported economic and reputational damages are the type of injuries one would expect to result from a tortious interference claim.

The SL Court noted that a claim of fraud "presupposes a general subjective intent to injure." Ibid. So, too, a tortious interference claim presupposes a

16

subjective intent to injure. However, we conclude the trial court was not required to determine whether the economic damages and reputational damage alleged by Dr. Russonella was a probable consequence of Dr. Hole's actions. They are the exact damages that would typically flow from a tortious interference claim. This is distinguishable from the SL Court's assessment of the emotional distress claims in the context of the fraud and wrongful discharge allegations in that matter. The Court noted, "[i]n the area of employment discrimination and unlawful discharges, courts have hesitated to find emotional distress . . . injuries a 'probable' outcome of wrongful behavior." Ibid. The same cannot be said of the damages alleged in this case.

We determine the damages alleged in this matter logically arise from the alleged tortious interference by Dr. Hole. The trial court did not have to inquire further as to Dr. Hole's specific subjective intent. It is only when the damages are not the probable outcome of the alleged tort that the court must determine whether the plaintiff "subjectively intended" to cause the actual injuries. Ibid. The intent to harm is an essential element of the tortious interference claim because, by definition, it requires malice or that the plaintiff inflicted the harm intentionally. Printing Mart, 116 N.J. at 751-52. Accordingly, the trial court did not err in finding that State Farm properly denied the coverage claim.

B.

Dr. Hole next argues the exclusions relied upon by State Farm are ambiguous. However, other than referring to the case law discussing ambiguity in the context of interpreting an insurance policy, and generally stating the exclusion provisions of the subject policy are "unclear and ambiguous," he does not provide a specific argument regarding how the exclusion provisions are susceptible to multiple meanings. Consequently, we decline to address this argument based on the insufficient briefing and record on this issue. An issue may be deemed waived if not properly briefed. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025); see also Telebright Corp. v. Dir., Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (treating such a failure to brief an argument as a waiver); Gormley v. Wood-El, 422 N.J. Super. 426, 437 n.3 (App. Div. 2011); Zavodnick v. Lever, 340 N.J. Super. 94, 103 (App. Div. 2001) (noting that a party's failure to present any argument relating to a cross-appeal constituted an abandonment of that claim).

C.

Dr. Hole next argues the exclusion provisions violated public policy. He asserts "public policy dictates that coverage should be extended to causes of action stemming from the same conduct that would otherwise have indisputably

18

been covered." Dr. Hole asserts that because State Farm provided coverage for the original defamation claim, and because "Dr. Russonella simply recast the . . . same facts into a tortious interference claim," he should be covered under the amended complaint.

We are unconvinced that because State Farm initially provided a defense for the defamation claim, it was required to also defend Dr. Hole because the amended complaint for tortious interference alleged similar facts. Dr. Hole conceded that the defamation cause of action originally pled by Dr. Russonella did not require Dr. Russonella to establish any intent to injure. The tortious interference claim, on the other hand, contains an intent component. Separate torts are often treated differently by insurance companies, as was the case here. Dr. Hole has not established the subject exclusion provisions were violative of public policy. An insurer's duty to defend "dissipates unless there remains other viable grounds for coverage." Sears Roebuck & Co., 340 N.J. Super at 242.

### D.

Dr. Hole argues the court erred in dismissing his counterclaims for breach of contract, declaratory judgment, breach of good faith and fair dealing, and bad faith and that his counterclaim was adequately pled.

Because we have determined the trial court did not err in granting State Farm's motion for summary judgment finding State Farm did not owe Dr. Hole a defense, we likewise conclude Dr. Hole cannot proceed with his counterclaims that rely on the same arguments we have rejected in affirming the trial court's order.

To the extent we have not otherwise commented on them, we have duly considered defendant's other arguments and conclude they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division